# ROBERT P. GANS v. COCA-COLA BOTTLING COMPANY, INC.[1]

March 24, 1939.

No. 31,999.

*Donohue, Quigley & Donohue,* for appellant.
*Elwin E. Hadlick* and *Thomas Tallakson,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order denying his motion for new trial.

The action was brought to recover damages upon the claim that defendant had "willfully and fraudulently concealed from the plaintiff" that a certain renewal contract executed by the parties to this

[1]Reported in 284 N. W. 844.

cause had not been approved by Western Coca-Cola Bottling Company of Chicago and the Coca-Cola Company of Atlanta, Georgia. It is conceded that the contract was not to become operative as such unless and until so approved by the two last named companies.

In September, 1934, the parties had entered into a written agreement (approved by the Chicago and Atlanta companies) under the terms of which plaintiff was given exclusive right within certain defined territorial limits "to bottle and sell bottled Coca-Cola." It was to continue until September 1, 1936. In July, 1936, the parties entered into negotiations for a renewal. Two applications therefor, including the proposed renewal contract (with three carbon copies) were sent to plaintiff for execution. He did so promptly and returned the papers to defendant. Plaintiff called at defendant's office in Minneapolis on several occasions to procure his duplicate thereof but failed to get it. He charges defendant with having falsely represented to him that both the Chicago and the Atlanta companies were dissatisfied with the manner in which he was conducting his business and as a consequence both had refused to consent to the new arrangement; that defendant's representations were false as the contract had been duly approved. Plaintiff, in the belief that the statements made by defendant were true, entered into an agreement whereby he "did sell and convey" to defendant all his interest in and the good will of his Coca-Cola business in the territory where he had theretofore operated for $1,000. By reason of these false representations plaintiff claims to have been damaged in the amount of $10,000.

Plaintiff while being examined by his counsel testified that the instrument offered in evidence was "positively not" the instrument he had signed because by its terms the contract was to be operative for two years whereas the exhibit (plaintiff's exhibit C) provided for but one year. The exhibit is here, and we have examined it. We find that it is perforated "CANCELLED" in three different places so arranged as to preclude any notion that it was to be operative as an agreement at all. In addition, it bears on its face in red ink and in large letters the following stamp:

"CANCELLED

"THE COCA-COLA CO.

"By [Signed] A. A. Acklin

"Vice Pres."

There was no other proof furnished in respect to a contract having been made. As a matter of fact plaintiff himself testified that in December, 1936, "it was my belief I didn't have a contract when I left Mr. Moore's place." (Witness was referring to a conversation he had in Minneapolis with Mr. Moore, defendant's president.) And further:

Q. "What did you believe as to whether or not you would receive one? [Copy of contract.]

A. "We believed we positively would not—"

During the course of the trial the court expressed the view that plaintiff's cause could not be established unless he first showed that there was in fact a contract; that the proof in that regard was inadequate in that "there was not a complete meeting of the minds of the parties. There was negotiation" and "discussion rather than execution."

Plaintiff's counsel evidently had nothing further to offer in respect thereto for he said:

Mr. Donohue: "Am I to understand then * * * that as far as going on with the testimony is concerned, that it is useless to do that because there was no contract? * * * And that there is no need of going on further with the testimony?

The Court: "Yes.

Mr. Donohue: "All right. I will take an exception to the court's ruling. * * * Then frankly there is no course open save to stop. The court has made up its mind and there is no possibility of its being changed.

The Court: "I would not say that it is not possible. I have frankly told you my impressions about your theory of the case, with the privilege of putting in your case if you desire to do it, which is a very common practice.

Mr. Donohue: "Well, I think we will stop right here as far as we are concerned with the record."

Defendant then rested and moved for dismissal with prejudice.

The Court: "Have you anything to say to that, Mr. Donohue?

Mr. Donohue: "No, nothing further that I can say. Anything further that I may say certainly would not prevail upon the court."

The motion was granted, and Mr. Donohue noted an exception.

Plaintiff's principal complaint here is that the proceedings in the trial court were "irregular" and "improper"; that the court "interrupted the taking of testimony and determined the case and issues" before giving him a chance to introduce "all of his testimony." This is the basis upon which he builds his argument for reversal.

■ We think the statement of facts heretofore made amply sustains the court's view with respect to the necessity of first establishing the existence of a contract before going into the issue of damages. As we have seen, the 1934 contract was about to expire when the new negotiations were entered into, and that no new contract was to become effective unless and until approved by the Chicago and Atlanta Coca-Cola companies. The proof tendered (nothing else was attempted by way of offer or otherwise) falls far short of establishing that there was a contract. The parties never got beyond the stage of "negotiation" or "discussion." And, this being so, the bottom falls out of plaintiff's case, for he has nothing upon which to base liability for fraud otherwise. The vital thing involved was the existence of a contract knowledge of which was falsely withheld from plaintiff so that he, relying upon defendant's representations of its nonexistence, was thereby deceived and as a consequence made an improvident sale of his property to defendant.

■ He next claims that he did not "rest" his case. It is true he did not use that expression, but the same thought is clearly expressed in what has been quoted. He concluded to "stop right here as far as we are concerned." Although invited by the court to proceed, and accorded "the privilege of putting in your case if you de-

sire to do it," he preferred otherwise; he simply submitted his supposed legal issue to the court for a final ruling. If this is not resting what is it?

He made no move to take a nonsuit nor did he ask to have his cause dismissed as did plaintiff in Willard v. Max A. Kohen, Inc. 202 Minn. 626, 279 N. W. 553. Instead, he followed the same course as did the plaintiff in McElroy v. Board of Education, 184 Minn. 357, 359, 238 N. W. 681. In this case, as in the McElroy case, plaintiff "submitted his case for decision" by refusal to go forward. "He invoked final judicial action thereon. Defendant was under no obligation to introduce evidence. Its privilege likewise was to submit its case to decision on plaintiff's evidence. That was done, and the decision, thus invited by both litigants, was on the merits." So it follows that (184 Minn. 360, 238 N. W. 682), "the judge decided the case as matter of law. Both parties having rested, the decision necessarily was on the merits  *  *  *."

Order affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.