## STATE EX REL. JOSEPH LENOUGH ANDERSON v. HOWARD A. BELLOWS AND OTHERS.

179 N. W. (2d) 307.

June 19, 1970—No. 42445.

*Douglas M. Head,* Attorney General, and *Randall C. Berkland* and *Lee E. Doering,* Special Assistant Attorneys General, for appellants.

*Douglas Hall* and *Robert E. Debel,* for respondent.

*Clinton J. Hall,* for Minnesota Education Association, amicus curiae.

SHERAN, JUSTICE.

Appeal from an order of the district court granting a petition for a writ of mandamus.

Dr. Joseph Lenough Anderson petitioned the District Court of Lyon County for an order directing Howard A. Bellows, M. L. Shane, and G. T. Mitau, who are, respectively, the president of

Southwest Minnesota State College, the dean of the faculties in that institution, and the chancellor[1] of the State College Board, to reinstate him as chairman of the Division of Humanities at the college and to afford him a hearing upon due notice with respect to his dismissal from this position. Neither the State College Board nor its members were included as parties. An alternative writ issued from the district court directing the respondents named therein to show cause why the writ should not issue. A return was made on their behalf by the Attorney General of the State of Minnesota. The Honorable L. J. Irvine, Judge of District Court, heard the matter on November 25, 1969, and by order dated January 15, 1970, directed the respondents in the district court proceeding to reinstate petitioner as chairman of the Division of Humanities of Southwest Minnesota State College and to give him "notice of dismissal for cause and a hearing on said

---

[1] The chancellor of the State College Board, who is not a member of the board, is appointed by the board to serve as its executive director. Minn. St. 136.12, 136.14. The duties and responsibilities of the office are outlined in Minn. Reg. SCB 8 as follows:

"(a)  Be the executive officer of the Board.

"(b)  Administer the Board Central Office.

\* \* \* \* \*

"(d)  Review and analyze the annual and quarterly college budgets, submit budgets and allotments for all five colleges and the Central Office, and recommend to the Department of Administration adjustment to these budgets.

"(e)  Coordinate educational programming and planning in the State College System.

"(f)  Conduct whatever studies of enrollment, faculty needs, curricula, costs, trends, buildings and equipment, budgetary needs, public relations and such other technical data as are deemed necessary to keep the Board completely informed.

\* \* \* \* \*

"(j)  Sign all documents on behalf of the Board, including contracts and legal papers. His signature shall be placed on file with the Secretary of State as an authorized signature.

"(k)  Carry out all other duties which may from time to time be required by the Board."

cause if he so requests." Respondents in the district court proceeding appeal from that order.

In a mandamus proceeding such as this, the burden of the party seeking the extraordinary relief is to demonstrate clearly that he is entitled to a particular office or position withheld from him without justification by the persons to whom the writ is to be directed.[2] In our opinion, this burden was not sustained and the writ is therefore discharged.

## FACTS

The contentions of the parties are based upon this factual background:

(1) In the fall of 1967, Dr. Lenough Anderson assumed the chairmanship of the Division of Humanities at Southwest Minnesota State College at Marshall, Minnesota, and served in that capacity during the 1967-1968 and 1968-1969 academic years.

(2) In August 1969, Dr. Anderson was replaced as chairman of the Division of Humanities following an extended exchange of correspondence involving principally Dr. Anderson, Dean Shane, and President Bellows.

(3) Dr. Anderson has continued at the school during the 1969-1970 academic year as an associate professor without loss of salary but without administrative authority.

(4) On December 11, 1969, Dr. Anderson was notified that he would not be reappointed to the faculty for the 1970-1971 year and that his employment would terminate effective June 15, 1970.

Dr. Anderson claims that he is entitled to mandamus directing his reinstatement as chairman of the Division of Humanities by reason of a contract of employment extending for a term of 4 years from its inception in the fall of 1967, which contract has never been properly terminated for cause. Respondents' theory is that Dr. Anderson's employment has been from year to year

---

[2] State ex rel. Stubben v. Board of County Commrs. 273 Minn. 361, 141 N. W. (2d) 499; Minn. Dig., Mandamus, Key No. 168(2).

and that he has not been deprived of any rights arising from these annual agreements. The record contains the following communications among the parties:

On February 27, 1967, M. L. Shane, as dean of the faculties of Southwest Minnesota State College, wrote a letter to Dr. Anderson, in which he stated:

"With the approval of President Howard A. Bellows, I am pleased to offer you the position of Chairman of the Division of Humanities at Southwest Minnesota State College.

\* \* \* \* \*

*"While the length of this appointment is not stated in the attached form, it is assumed that the initial commitment by you and the College will be for a minimum period of four years, or the life-span of one class."* (Italics supplied.)

The form to which reference is made in this February 27 letter is captioned: "LETTER OF APPOINTMENT." It purports to certify the appointment of Anderson as Chairman of the Division of Humanities at Southwest with duties to begin August 1, 1967, and remuneration to be $12,000 for the academic year of 9 months, $1,400 per summer session, and certain specified fringe benefits. Significantly, the letter of appointment concluded with this paragraph:

*"All appointments to the College Faculty are submitted to the Minnesota State College Board for final consideration. Meanwhile, this form duly signed constitutes a commitment for appointment by the College Administration. After action by the College Board, a formal contract will be issued."* (Italics supplied.)

It is accepted that about one-third of approximately 45 faculty members recruited in 1967 for administrative and instructional responsibilities received letters to this same effect. As to the balance, the comparable communications referred to lesser periods, 2 years in most cases and only 1 year in at least one case.

By letter dated June 30, 1967, Howard A. Bellows, as president of Southwest, informed Dr. Anderson as follows:

"At the meeting of June 20, 1967, the Minnesota State College Board appointed you to the position of Chairman of the Division of Humanities at Southwest Minnesota State College beginning September 10, 1967. You will receive a salary of $12,000 for the academic year. In addition, we have allowed $1400 for a six-week appointment this summer as indicated in Dean Shane's correspondence."

Except for these letters, there is nothing in the record before us to show that the State College Board ever offered, accepted, approved, or ratified an employment contract for any period beyond one year. Excerpts from the minutes of board meetings of June 20, 1967, and August 19, 1968, submitted to the trial court, reflect board approval of Southwest Minnesota State College "personnel resolutions" which refer to Dr. Anderson's employment, but in neither instance can inference of employment except on a yearly basis be derived from these minutes.[3]

By letter dated April 3, 1969, addressed to President Bellows, Dean Shane recommended that "Dr. Anderson not continue beyond this academic year in his administrative position as Chairman of the Division of Humanities," but that instead he "be

---

[3] This excerpt is from the June 20, 1967, minutes:
"Southwest—
"RESOLVED: That the following personnel changes be approved:

| | "UNCLASSIFIED PERSONNEL MAINTENANCE ACCOUNT | | | | |
|---|---|---|---|---|---|
| * * * | *Division or* | *9/12* | | *Effective* * * * | |
| "Name | *Department* | *Month* | *Salary* | Date | |
| | * * * * * | | | | |

"GROUP II:
Anderson, J.
Lenough * * *  Humanities  9  $12,000  9/10/67  * * *"

This excerpt is from the August 19, 1968, minutes:
"Southwest Minnesota State College                    June 21, 1968

offered an appointment for 1969-70 as Associate Professor." This recommendation was conveyed to Dr. Anderson by President Bellows with a letter stating that he concurred in it.[4]

During the period from April 18, 1969, to June 10, 1969, three specific proposals were submitted to Dr. Anderson, each of which contemplated a teaching role for the 1969-1970 academic year without administrative responsibility at a salary at least equal to that which he had received the previous academic year but without any firm commitment concerning 1970-1971. Apparently none of these proposals was satisfactory to petitioner since it appears that he made no written response to them.

On July 28, 1969, the proposals were withdrawn by President Bellows. Dr. Anderson was advised that proceedings would be instituted to effect his discharge for cause. Since Dr. Anderson had not been given timely notice, as required by the applicable regulations of the State College Board,[5] of the intention not to

---

"UNCLASSIFIED PERSONNEL
MAINTENANCE ACCOUNT
"ROUTINE CHANGES IN PERSONNEL THRU 7-25-68

| "Name | * * * | Position Last Held | # of Years | Dept. or Division | * * * | Base Salary | Effective Date– Remark |
|-------|-------|--------------------|------------|-------------------|-------|-------------|-------------------------|
| "SUMMER APPOINTMENTS | | | | | | | |
| | | | * * * * * | | | | |
| "Anderson Lenough | * * * | SMSC | 1 | Humanities | * * * | 1,650 | 6-18-68" |

[4] The recommendation to relieve Dr. Anderson of his administrative responsibilities was apparently based upon a personality conflict involving Dr. Anderson and other administrative officials at the college. There is no suggestion of lack of ability or diligence on the part of Dr. Anderson.

[5] Minn. Reg. SCB 17(b) provides: "Reappointment of Non-Tenure Faculty. In case a faculty member not on permanent tenure is not to be reappointed for the ensuing academic year, the president shall notify him in writing of the intent not to reappoint by a specific date as indicated below:

"(1) Not later than December 15 of the second and any subsequent

reappoint him to his 1968-1969 position, he was entitled to reappointment for the 1969-1970 year unless dismissed for cause by the State College Board.

On August 7, 1969, Mr. Douglas Hall, Dr. Anderson's attorney, responding to the July 28 letter and referring to the foregoing rules, wrote: "We will request such hearing upon receipt of the written reasons for discharge if action is taken by the State [College] Board."

By letter dated August 14, 1969, President Bellows informed Dr. Anderson:

"Effective immediately, your duties as Chairman of the Division of Humanities at Southwest Minnesota State College are hereby terminated.

*   *   *   *   *

"* * * Although you have not seen fit to accept a teaching assignment with the institution, we would consider your reassignment as a member of the teaching faculty if you will indi-

academic year of such service if the appointment expires at the end of that academic year.

*   *   *   *   *

"Dismissal of Non-Tenure Faculty. Until unclassified personnel achieve tenure as hereinafter provided, such personnel shall be deemed to be in a probationary period of employment, and any annual contract may or may not be renewed as the *State College Board* may deem fit, provided however such unclassified personnel may be discharged for cause *during any contract period* upon written notice to such person. *If* such person requests reasons for dismissal for cause, the *State College Board* shall give their reason in writing within ten days after receiving such request. Such person, within ten days after receiving such written reason, may make a written request for a hearing before the *State College Board,* which shall be provided. Termination shall occur at such time as determined by the *Board* after completion of such hearing if requested. If no hearing has been requested, termination shall occur as provided in the resolution previously adopted. These provisions shall not affect the powers of the *State College Board* to dismiss under any other provisions provided by law." (Italics supplied.)

cate your willingness to do so to my office within ten days of the receipt of this letter."

On September 22, 1969, President Bellows recommended to the State College Board that Dr. Anderson should be reassigned from the position of chairman of the Division of Humanities to a teaching assignment at a salary of $13,500 for the 9-month 1969-1970 academic year. The recommendation was adopted by the board.

On September 24, 1969, Dr. Anderson received two letters, the first of which was from President Bellows announcing his recommendation of reassignment and the State College Board's ratification of that recommendation and indicating that Dean Shane would advise Dr. Anderson of the details of the new assignment. The second was from Dean Shane, specifying Dr. Anderson's teaching responsibilities and stating:

"* * * In these responsibilities you will report to the Office of the Dean of Faculties.

"Your rank for the coming academic year of 1969-70 will be Associate Professor of Humanities. Your salary for the academic year of nine months (September 15, 1969-June 15, 1970) will be thirteen thousand five hundred dollars ($13,500)."

Dr. Anderson, although ready and willing to perform the duties of chairman of the Division of Humanities of the college, wrote a letter to Dean Shane dated September 30, 1969, in which he stated:

"I do not accept the reassignment of responsibilities or the attempt to change my status as Chairman of the Division of Humanities. I consider the effort to terminate my four year contract as Chairman of the Division of Humanities, to discharge me for cause, to change my duties, to reassign my responsibilities as beyond the authority of yourself and President Bellows. I will shortly file legal action to redress the wrongs that have been committed by you, President Bellows, and others against me.

* * * * *

"In order to avoid any action which will injure the incoming students or deprive them of their course work, I will meet and teach, the classes as outlined by you in your letter of September 26, 1969, until the Court has determined the matter."

## DECISION

■ Southwest Minnesota State College was established by the Legislature of the State of Minnesota in 1963 by L. 1963, c. 689, which provides specifically that it shall be subject to the jurisdiction of the State College Board. Minn. St. 136.016. In 1965, the legislature added Southwest Minnesota State College to the state educational institutions designated as "state colleges." L. 1965, c. 331, § 1, Minn. St. 136.01. In Minnesota, the state colleges are subject to the management, jurisdiction, and control of the State College Board (§ 136.03) consisting of the commissioner of education of the State of Minnesota, who serves by reason of his office, and eight directors appointed by the governor, subject to confirmation by the senate, for terms of 6 years. §§ 136.12, 136.13.

Section 136.14 provides in part:

"The state college board shall have the educational management, supervision, and control of the state colleges and of all property appertaining thereto. It shall appoint all presidents, teachers, and other necessary employees therein and fix their salaries. It shall * * * adopt suitable rules and regulations for the colleges."

It is clear from these statutes that the exclusive authority for the management and control of each of the state colleges is to be found in the State College Board except in so far as that authority may be restricted by the legislature itself or appropriately delegated by the board by means of rules and regulations adopted pursuant to the legislative direction to adopt suitable rules and regulations for the colleges. Thus, the exclusive power to enter into contracts of employment with persons such as petitioner is in the State College Board except in so far as its duly

promulgated rules and regulations delegate that responsibility to others. Further, the board, like any other agency of the state, is itself subject to such limitations of authority as the legislature may prescribe, as for example, restraints on the incurrence of obligations in excess of legislative appropriations. See, § 136.07; Butler v. Hatfield, 277 Minn. 314, 152 N. W. (2d) 484.

■ We have found no regulation of the board which delegates to anyone the board's authority to enter into employment contracts. Minn. Reg. SCB 10 does provide:

"Duties and Responsibilities. The president shall be the chief administrator in each college. He shall be responsible for and have the authority to direct all activities and all functions of the college in conformity with the established policies of the Board. His responsibilities shall include the following:

\* \* \* \* \*

"(d) He shall be responsible for the selection of all personnel of the college. In the case of academic staff, he shall have previously consulted with appropriate sectors of the faculty when possible. He shall submit his recommendations for Board action regarding their re-employment, promotion, assignment or reassignment or dismissal, according to the rules and regulations of the State College Board and the Civil Service Department. All proposed changes in the employment, assignment or dismissal of personnel shall be reported to the Board for action as soon as possible."

We do not interpret this rule as authorizing the president of a state college to bind the State of Minnesota or its agency, the State College Board, to contracts of employment. It imposes on the college president the duty of making the selection of persons to whom contracts will be tendered but, as the letter of appointment supplied to Dr. Anderson on February 27, 1967, should have made quite clear, the recommendation of the president requires the approval of the board before a contract of employment can be created. The letter of appointment constituted a preliminary

negotiation and not a contract. See, 1 Corbin, Contracts, § 30; Gans v. Coca-Cola Bottling Co. Inc. 205 Minn. 36, 284 N. W. 844.

■ The burden of showing that the State College Board entered into an employment contract with Dr. Anderson for a 4-year term was on the petitioner. It is conceded that no formal contract was ever executed. More significantly, no act of the board reflecting knowledge and approval of Dean Shane's letter of February 27, 1967, was proved. There would be no obligation on the part of the State College Board to inform Dr. Anderson that he was not to be tendered a contract for a term of 4 years in the absence of some showing that the board was informed officially that negotiations were made with a 4-year employment contract as a term of reference. Dr. Anderson must be charged with knowledge that the exclusive authority for the execution of employment contracts by state colleges rests, under our statutes, with the State College Board.[6] If the term of his employment was a significant factor in his decision to serve as chairman of the Division of Humanities at Southwest Minnesota State College, it was his burden to assure himself that the required authorization of Dean Shane's proposal had been secured from the State College Board. Authorization of the representation made by Dean Shane cannot be inferred until it is first established that the board had actual knowledge that the representation was made.[7] There is no evidence that would support such an inference. The fact that during preliminary negotiations with other faculty members similar references to a 4-year period of employment were made by the college officials does not supply the basis for an inference that the State College Board deliberately

[6] Doyle v. City of St. Paul, 204 Minn. 558, 284 N. W. 291; Laramore & Douglass, Inc. v. City of Anderson (7 Cir.) 222 F. (2d) 480; Kent County Planning Inspector v. Abel, 246 Md. 395, 228 A. (2d) 247; Brown v. Mount Vernon Housing Authority, 279 App. Div. 794, 109 N. Y. S. (2d) 392.

[7] Pesio v. Sherman, 285 Minn. 246, 172 N. W. (2d) 748; Hockemeyer v. Pooler, 268 Minn. 551, 130 N. W. (2d) 367; Restatement, Agency (2d) § 7.

approved by its silence the representations which had been made in the preliminary negotiations. On the contrary, the fact that formal contracts for a 4-year period were never tendered to the faculty members involved suggests that the State College Board did not know of these representations or considered itself without authority to enter into a contract involving expenditures in excess of appropriations already made.

We do not hold that a 4-year employment contract to which the State College Board might be a party would necessarily be void as a contract to make a payment in advance of appropriation. It is not necessary to decide this question.

■ Our conclusion is merely that the writ of mandamus should not have issued because relator failed to maintain his burden of proving the existence of a contract upon which his claim for relief depends.

■ It has been urged that in any event petitioner was discharged from his position as chairman of the Division of Humanities and that he is entitled to notice and opportunity to be heard concerning the grounds for discharge. Dr. Anderson, whose qualifications in his field as an instructor are apparently of the highest order, has voluntarily served as an associate professor for 1969-1970, reserving his right to claim the chairmanship of the Division of Humanities on the theory that he had secured a 4-year employment contract. We have decided against him on this point of law. Under our analysis of the problem, the employment contract between Dr. Anderson and the college board was from year to year. A proper notice has been given that it will not be renewed for the academic year 1970-1971. As to the academic year of 1969-1970, we do not believe that a hearing with respect to the reasons why he was not permitted to serve as chairman of the Division of Humanities during an already completed academic year is required or would serve any useful purpose.

Order vacated and writ discharged. No costs or disbursements shall be taxed.