Timothy J. GETTER,
Respondent-Relator,

v.

TRAVEL LODGE, et al.,
Relators-Respondents.

Nos. 47585, 47604.

Supreme Court of Minnesota.

Nov. 10, 1977.

Van Eps & Gilmore and George R. Benton and Donald W. Anderson, Minneapolis, for employer and insurer.

Robert R. Johnson, Minneapolis, for employee.

Heard before PETERSON, YETKA and WAHL, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Timothy J. Getter sustained an abdominal gunshot wound during a robbery of his employer's place of business which caused various internal injuries requiring surgical removal of his right kidney. A compensation judge awarded Getter temporary partial disability benefits, which are not in dispute here, and $50,000 for permanent partial disability based on 500 weeks' wages, the maximum period for injury to an internal organ under Minn.St. 176.101, subd. 3(40). A majority of the Worker's Compensation Court of Appeals reduced the award to $25,000, based on 250 weeks' wages. Both Getter and the employer seek review in this court.

Getter argues that since he suffered total loss of his right kidney, § 176.101, subd. 3(40), requires that he receive the maximum award based on 500 weeks. The employer argues that § 176.101, subd. 3(40), is so vague, ambiguous, and indefinite that its application would deny due process of law. Alternatively, the employer argues that Getter is not entitled to an award under § 176.101, subd. 3(40), because his renal system is functioning using his remaining kidney.

In order to reach the employer's constitutional argument, we must first attempt to interpret the statute and apply it to the facts of this case. Section 176.101, subd. 3, provides in part:

" * * * [C]ompensation shall be that named in the following schedule * * *:

   \*     \*     \*     \*     \*     \*

"(40) For permanent partial disability resulting from injury to any internal organ, including the heart, 66⅔ percent of the daily wage at time of injury *for that proportion of 500 weeks which is represented by the percentage of such permanent partial disability as is determined from competent testimony* adduced at a hearing before a compensation judge, a commissioner, or the worker's compensation court of appeals." (Italics supplied.)

While this language is formidable on first reading, we believe it is capable of reasoned interpretation and application.

Initially, it should be noted that § 176.101, subd. 3(40), is but one portion of the compensation schedule for permanent partial disability. Most of the other 48 paragraphs of this subdivision concern loss of specific body members for which the legislature has specified fixed week periods for calculating awards.

Section 176.101, subd. 3(40), allows far greater latitude in determining the award for injury to an internal organ. The basis for an award under § 176.101, subd. 3(40), may vary from 0 to 500 weeks' wages. Apparently the legislative drafters reasoned that because of the multitude of internal organs, the vast differences in their importance, and the many different types of injuries which they might sustain, awards for injury to internal organs could not be legislatively specified with the same precision as awards for loss of body members.

■ The first portion of the statute specifies the circumstances in which the statute applies. It applies where there has been "permanent partial disability resulting from injury to any internal organ, including the heart." Here there has been "injury to any internal organ" irrespective of whether the right kidney is considered a separate organ or part of the entire renal system. And the compensation court of appeals found as a fact that Getter suffered a "permanent partial disability" as a result of the injury. Thus, § 176.101, subd. 3(40), clearly applies in this case. We also note there is no dispute as to the next portion of the statute which provides compensation for "66⅔ percent of the daily wage at time of injury." Getter's wages at the time of the injury entitle him to the maximum compensation rate of $100 per week.

■ The portion of the statute which is in dispute provides that the award will be "for that proportion of 500 weeks which is represented by the percentage of such per-

manent partial disability as is determined from competent testimony." We agree with the majority of the compensation court of appeals that this provision directs the compensation judge to look to the "percentage of such permanent partial disability" which the employee has suffered. That determination cannot be made by the expediency of looking to the percentage of internal organ lost. For example, loss of 100 percent of the gallbladder does not result in 100-percent permanent partial disability.

The compensation court of appeals' previous decisions under § 176.101, subd. 3(40), have recognized the difference in the relative importance of various internal organs. In *Leary v. County of LeSueur*, 29 W.C.D. 270 (1976), an injury resulted in removal of the employee's spleen. The compensation court determined this resulted in 10-percent permanent partial disability and made an award based on 50 weeks' wages. In *Anderson v. Husky Hydraulics, Inc.*, File No. 396–36–4999, Dec. 23, 1976, and *Garcia v. Twin City Monorail*, File No. 474–64–4501, Dec. 16, 1976, the employee suffered loss of one testicle. In *Anderson* the compensation court of appeals determined the employee suffered a 20-percent permanent partial disability and made an award based on 100 weeks. In *Garcia* a determination of 25-percent permanent partial disability yielded an award based on 125 weeks. In each of these three cases, the compensation court of appeals properly sought to determine the percentage of permanent partial disability which the employee sustained. Such determinations cannot be made with mathematical precision. Under the statute as it presently stands, compensation judges can do no more than look to the nature and extent of the injury and the relative importance of the internal organ or organs injured and from these factors estimate the percentage of permanent partial disability which the employee has sustained.

In the present case the compensation court of appeals' determination that Getter suffered 50-percent permanent partial disability from loss of the right kidney may be generous,[1] but is within the bounds of discretion which the legislature has delegated. The kidneys are vital and vulnerable organs. Loss of one kidney subjects the person affected to the severe potential danger of injury to the other kidney. Needless to say, the legislature may conclusively specify some other award for such a loss or elaborate the criteria which the compensation court should apply in future cases.

Finally, we reach the employer's constitutional argument that the statute is so vague and ambiguous that any attempt to apply it would offend due process guarantees. The void-for-vagueness principle in civil law is different than in criminal law, although this court in *Anderson v. Burnquist*, 216 Minn. 49, 11 N.W.2d 776 (1943), upon which the employer chiefly relies, did not articulate the difference. But what was said there is a sufficient answer to the employer's constitutional argument:

"* * * Mere difficulty in construction is not of itself sufficient to set aside a statute. Extreme caution should be exercised by courts before declaring a statute void, and it should be upheld unless its terms are so uncertain and indefinite that after exhausting all rules of construction it is impossible to ascertain the legislative intent." 216 Minn. 53, 11 N.W.2d 778.

Under this standard § 176.101, subd. 3(40), is not unconstitutional. The statute evidences an ascertainable legislative intent that compensation be paid for injury to internal organs, and the statute does provide a broad general standard for determining the amount of compensation.

Affirmed.

SHERAN, C. J., took no part in the consideration or decision of this case.

---

1. This determination yields an award based on 250 weeks. By comparison, the statute specifies an award based on 270 weeks for loss of an arm, 220 weeks for loss of an entire leg, 170 weeks for complete loss of hearing in both ears, 160 weeks for loss of an eye. Minn.St. 176.101, subd. 3(14), 3(19), 3(23), and 3(21).