**In the Matter of the Application for the Discipline of Clifford F. HANSEN, an Attorney at Law of the State of Minnesota.**

No. 52083.

Supreme Court of Minnesota.

May 7, 1982.

Michael Hoover, Director of Lawyers Professional Responsibility, Janet Dolan, Staff Atty., St. Paul, for appellant.

LeRoy E. Haglund, Wayzata, for respondent.

PER CURIAM.

This case is before the court following the conclusion of a hearing held on July 15, 1981, before Referee Ben F. Grussendorf. After considering charges of unprofessional conduct brought against respondent, Clifford F. Hansen, a panel of the Lawyers Professional Responsibility Board (LPRB) had recommended that he be indefinitely suspended and instructed the director of LPRB, Michael J. Hoover, to file a petition for disciplinary action. On September 11, Referee Grussendorf filed his findings of fact, conclusions of law and recommendation, in which he recommended that respondent be indefinitely suspended.

Respondent, who practices in Minneapolis as a sole practitioner, was admitted to the Minnesota Bar in 1922. He is 88 years old. One of his clients is Carl Henning, who owns certain residential rental property in Minneapolis. In February of 1978, Eileen Gravening, one of Henning's former tenants, filed a claim in Hennepin County Conciliation Court to recover a $75 damage deposit from Henning. She was awarded the full amount. Respondent, representing Henning, removed the matter to Hennepin County Municipal Court, where Gravening's husband was added as co-plaintiff.

The matter was heard by a jury on March 6, 1979. The jury awarded the Gravenings $427, which was the full amount of their damage deposit plus statutory and punitive damages. A three-judge panel of the Hennepin County District Court affirmed the action of the Municipal Court. Respondent

then had Henning and his wife take polygraph tests. The cost of the tests was $350, which respondent advanced to the Hennings. The results of the tests apparently led respondent to believe that the Hennings had told the truth at the trial and that the Gravenings therefore must have lied. He also concluded that the Gravenings' attorney, Thomas Vasaly, must have encouraged them to present perjured testimony. Respondent then wrote a letter to Henning in which he criticized the jury's verdict and sent copies of the letter to each member of the jury. The letter stated in part:

> Obviously, you un-fortunately got a Jury, (5 female-persons, and 1 male-person), who either lacked good judgment or were in-different to their responsibilities as sworn jurors. It appears that they were out only a very short time to organize and discuss two days of testimony; and then returned a verdict soaking you for $200—the maximum allowed by statute as punitive damages.—I wonder what they would have done had the statute allowed $500.—If they are ever again called as prospective jurors they should disclose the above.

In August of 1979, Thomas Vasaly filed allegations of unprofessional conduct against respondent with the LPRB. The complaint was referred to the Hennepin County Bar Association Ethics Committee, which heard Vasaly's complaint in early December 1979.

At about the same time, respondent brought an action in Hennepin County District Court against the Ethics Committee. Shortly thereafter he filed a supplemental complaint naming LPRB as an additional defendant. Respondent's lawsuit was dismissed on February 5, 1980.

In December 1979, the Ethics Committee notified the director of LPRB regarding Vasaly's complaint and respondent's lawsuit, and recommended additional investigation. Respondent was asked by letter to meet with the director. Respondent replied, also by letter, that he would provide additional information only if ordered to do so by the Minnesota Supreme Court. He did not appear for the meeting with the director.

On March 31, 1980, respondent filed on behalf of Henning a lawsuit against the Gravenings; Thomas Vasaly; Vasaly's employer, the Legal Aid Society; and the Honorable Dana Nicholson, the presiding judge at the Municipal Court trial. Respondent sought to have the judgment in the Henning case vacated on the ground that the Gravenings submitted false evidence. The complaint charged that Vasaly had suborned perjury and that Judge Nicholson had "recklessly" misconstrued the law. Respondent also sought a grand jury investigation of the Gravening's allegedly false testimony and Vasaly's part in it, but the county attorney refused to initiate any such investigation. On September 24, 1980, the court granted summary judgment against respondent.

A panel of LPRB held a hearing on October 3, 1980, to consider the matter of respondent's conduct. The panel concluded that respondent had engaged in unprofessional conduct and found that, because respondent did not seem to recognize that his conduct was improper, it was likely to continue. Respondent testified at the hearing that he probably would have retired by that time, but, because he believed litigation arising out of the Henning case might continue and might occupy a substantial amount of his time in the future, he had not retired. The panel recommended indefinite suspension unless respondent would agree to wind up his practice and resign from the bar. The director of the LPRB sent respondent a stipulation according to the terms of which he would close his practice and resign from the bar. Respondent did not execute the stipulation.

On November 10, 1981, respondent brought an action in the United States District Court, District of Minnesota, naming as defendants the State of Minnesota, the Minnesota Supreme Court, Michael J. Hoover, Ben Grussendorf, the American Bar Association, and "John Doe and Richard Roe." The complaint alleged that by instituting disciplinary proceedings against re-

spondent, the defendants violated respondent's first and fourteenth amendment rights, giving rise to a cause of action under 42 U.S.C. § 1983 (1976). The court granted the defendants' motion to dismiss on January 19, 1982.

In his findings and conclusions, Referee Grussendorf stated that: (1) respondent sent the letter to the members of the jury to harass or embarrass them and to influence any future action they might take as jurors; this action violated the Minnesota Code of Professional Responsibility, DR 1–102(A)(1), DR 1–102(A)(5), DR 1–102(A)(6), DR 7–102(A)(1), and DR 7–108; (2) respondent's lawsuit against the Ethics Committee and LPRB was without basis and was intended to harass and injure defendants; by initiating the suit, respondent violated DR 1–102(A)(1), DR 1–102(A)(5), DR 1–102(A)(6), DR 7–102(A)(1), and DR 7–102(A)(2); (3) by failing to cooperate with the director's investigation, respondent violated DR 1–102(A)(1), DR 1–102(A)(5), and DR 1–102(A)(6); and (4) respondent's lawsuit against Thomas Vasaly and Judge Nicholson was also without merit and was intended to harass and injure them; by initiating the suits, respondent violated DR 1–102(A)(1), DR 1–102(A)(5), DR 1–102(A)(6), DR 7–102(A)(1), and DR 7–102(A)(2).

Respondent contends that he should not be suspended due to his age, his sincere belief that he was zealously representing his client, and his heretofore unblemished record as an attorney. He argues that because of his age he might not, in any event, be able to practice much longer and that his career should not be ended by suspension from practice. The director urges this court to follow the recommendations of Referee Grussendorf and the panel and indefinitely suspend respondent on the grounds that he shows little inclination to discontinue his present conduct and that no other sanction will adequately protect the public.

The fact that a lawyer has conducted himself ethically in the past has been taken into consideration in determining whether he should be allowed to resign from the bar or be subject to harsher sanctions. See Matter of Johnson, 290 N.W.2d 604, 607 (Minn.1980). Respondent has already been given an opportunity to resign, however, and he has declined to do so. The determining factor in this case is whether respondent is likely to continue his present course of conduct. The purpose of disciplinary action is not to punish the lawyer but to protect the public. Matter of Peterson, 274 N.W.2d 922, 925 (Minn.1979). Although it is unfortunate that a lawyer should be disciplined when the acts giving rise to the discipline obviously were committed as a result of the lawyer's advanced age rather than moral shortcomings, this court has held that, because the court's primary duty is protection of the public, "[t]he enlistment of a natural human sympathy * * * cannot be permitted to deter us from performance of this duty." In re Hanson, 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960). Respondent has made it clear that he does not intend to terminate the litigation brought in connection with the Henning matter. In light of this situation, we would be inclined to follow Referee Grussendorf's recommendation and suspend him indefinitely. However, Rule 15(a)(5) of the Rules on Lawyers Professional Responsibility permits us to make "such other disposition as this Court deems appropriate." As Referee Grussendorf pointed out, respondent is "a gifted and scholarly man who has possessed exceptional legal qualifications and who has had a long and rewardingly useful career in his chosen profession." We do not believe that the severe sanction of indefinite suspension is either appropriate or necessary for the protection of the public in this case. We are instead placing respondent on inactive status; he will remain a member of the bar of this state with the limitation that he may represent only members of his family. He will be required to wind up his practice with respect to all other matters, including that which gave rise to these proceedings.

So ordered.

AMDAHL, C. J., took no part in the consideration or decision of this case.