### In re CHARGES OF UNPROFESSIONAL CONDUCT AGAINST N.P.

#### Nos. C4–84–981, CO–84–1223.

Supreme Court of Minnesota.

Jan. 25, 1985.

---

Ronald T. Meshbesher, Jack S. Nordby, for petitioner; Patrick J. Foley, Frances S.P. Li, Minneapolis, of counsel.

Michael J. Hoover, Dir. of Lawyers Prof. Res. Bd., Janet M. Dolan, Asst. Director of Lawyers Prof. Res. Bd., St. Paul, for respondent.

## PER CURIAM.

This case involves two petitions by attorney N.P. (petitioner) for a writ of prohibition, writ of mandamus, or other relief, one restraining the Director of the Lawyers Professional Responsibility Board (director) from enforcing Rule 25, Rules on Lawyers Professional Responsibility, and ordering him to dismiss or limit his disciplinary investigation of petitioner and the second ordering the director to revise the charges issued against petitioner and dismiss those based upon DR 1–102, DR 2–203, DR 5–105, and DR 5–106 of the Minnesota Code of Professional Responsibility. These petitions are considered together for purposes of this opinion.

The facts that form the basis of each case are similar and involve legal manuevering of a kind that has resulted in unusually protracted judicial proceedings. In

July 1979, the director began a disciplinary investigation of petitioner in response to a letter from a Superior, Wisconsin, physician charging that petitioner's firm has "flagrantly solicited ladies who have had Dalkon shields (sic) inserted for birth control over the past ten years and [has] wrought emotional havoc upon them. [Members of the firm] have flagrantly suggested that they could obtain a cash settlement from Robins Drug Company * * *." [1] This complaint was dismissed on September 28, 1979, with a finding of no unethical conduct. The director subsequently discovered evidence to substantiate the complaint, including evidence that petitioner had allegedly falsified in connection with the original investigation. Accordingly, on May 6, 1980, the director informed petitioner that the matter was to be reopened.

During 1980, 1981, and 1982, successive grand juries conducted detailed investigations of alleged wrongdoings by petitioner, culminating in his February 16, 1982, indictment in federal district court for mail fraud. Shortly thereafter, the director dismissed two additional complaints involving petitioner's activities: on April 6, 1982, a complaint alleging that petitioner had refused to turn over the contents of a client file to a successor attorney and on June 3, 1982, a complaint alleging that petitioner had refused to turn over a client file after representation. Both dismissals were limited to the specific complaints and are unrelated to the matter currently at issue.

Following petitioner's indictment, the director stayed investigation of the original complaint, primarily to avoid duplicating the trial court's efforts and to conserve the limited resources of his office. Petitioner was tried before a jury in federal district court and, on November 20, 1982, was acquitted of all charges.

The director then requested access to trial exhibits that he believed would aid his disciplinary investigation, but neither petitioner nor the government would produce them without court order. Consequently, in January 1983, the director filed with the federal district court a motion for release of exhibits, including those presented to the grand jury. Following objections by petitioner, the director amended his motion, withdrawing his request for grand jury exhibits. In his amended motion, the director cited petitioner's failure to voluntarily provide the exhibits pursuant to Rule 25, which requires that an attorney subject to a disciplinary investigation or proceeding cooperate with the director by complying with reasonable requests.

As a result of the director's action, petitioner, on June 13, 1983, moved for an order in Hennepin County District Court declaring Rule 25 unconstitutional and enjoining the director from enforcing it. The district court issued an order to show cause why the requested relief should not be granted. In response, the director petitioned this court for a writ of prohibition, claiming the district court lacked jurisdiction. On July 12, 1983, we issued a writ directing the district court to suspend or dismiss any further action in *N.P. v. Hoover*, No. C9-83-870 (Minn. July 12, 1983).

On June 20, 1982, while his action was still pending in Hennepin County District Court, petitioner filed a motion in federal district court likewise requesting an order declaring Rule 25 unconstitutional and enjoining its enforcement. The federal court issued an order, filed on September 19, 1983, refusing at that time to rule on the constitutionality of Rule 25 but ordering that the requested exhibits from petitioner's mail fraud trial be turned over to the director, provided the director obtained waivers of confidentiality from individuals whose medical records were included in the exhibits. *Application of the Director of Lawyers Professional Responsibility re: N.P. v. United States of America*, Cr. No. 3-82-32 (D.Minn. Sept. 19, 1983).

---

**1.** This case does not involve the merits of the celebrated issues concerning the liability of the A.H. Robins Company with respect to the Dalkon Shield intrauterine device but involves, rather, charges of overreaching by an attorney in undertaking to obtain a share of the profits from such litigation.

After receipt of the trial exhibits, the director continued his investigation and, on May 8, 1984, issued the following charges against petitioner:

### Charge [No. 1]

Respondent's solicitation of cases and payment of referral fees violated the disciplinary rules, including but not limited to, DR 2–103(A)(2) and DR 3–102(A), Minnesota Code of Professional Responsibility (MCPR). Respondent's altering of law firm records to hide the payment of referral fees and respondent's directions to [an associate attorney] were attempts to subvert the disciplinary investigation and violated the disciplinary rules, including but not limited to, DR 1–102(A)(2), DR 1–102(A)(4), DR 1–102(A)(5) and DR 1–102(A)(6), MCPR.

\* \* \* \* \* \*

### Charge [No. 2]

Respondent's payment of monies to [an insurance investigator] while [the investigator] was an Aetna adjuster and negotiating Dalkon Shield claims, undermined [the investigator's] loyalty to Aetna. Respondent's receipt of confidential information from [the investigator] to enhance his clients' cases subverted the adversary system. Respondent created serious conflicts of interest for [the investigator] and took advantage of them to the detriment of respondent's clients, Aetna, A.H. Robins, and the legal system. Respondent's conduct violated the disciplinary rules, including but not necessarily limited to DR 1–102(A)(2), DR 1–102(A)(5), DR 1–102(A)(6), DR 5–101, DR 5–105 and Canon 9, MCPR.

\* \* \* \* \* \*

Respondent's failure to disclose to his clients his employment of [the investigator], breached his fiduciary duty to his clients. His settlement of Dalkon Shield claims with [the investigator], or [the investigator's] co-workers, jeopardized the settlements with Aetna due to [the investigator's] role in their settlement. His conduct violated the disciplinary rules, including but not limited to DR 1–102(A)(5), DR 1–102(A)(6) and DR 7–101(A), MCPR.

\* \* \* \* \* \*

### Charge [No. 3]

Respondent's failure to communicate with his clients and failure to obtain his clients' consents for settlement, some of which were settled in block settlements, violated the disciplinary rules, including but not limited to DR 1–102(A)(6), DR 5–105(B), DR 5–106 and DR 7–101, MCPR.

### Charge [No. 4]

Respondent's failure to maintain in the trust account monies equal to the monies to be held in trust and failure to pay clients interest earned on client monies constituted misappropriation of client monies in violation of the disciplinary rules, including but not necessarily limited to DR 9–102(A)(4), MCPR. Respondent's deposit of firm funds in the trust account and his failure to remove law firm monies from the trust account constitutes commingling of client monies with law firm monies and violated the disciplinary rules, including but not necessarily limited to DR 9–102, MCPR. Respondent's failure to maintain proper books and records to determine interest earned on client monies violated the disciplinary rules, including but not necessarily limited to DR 9–102(B)(3) and DR 9–102(A), MCPR, and Opinion 9 of the Lawyers Professional Responsibility Board.

\* \* \* \* \* \*

### Charge [No. 5]

Respondent's paying insurance adjusters with whom the law firm negotiated cases undermined the adjusters' loyalty to their employers. Respondent created a conflict of interest for the adjusters and took advantage of them to the detriment of respondent's clients, the insurance companies, the insureds and the legal system. Respondent's conduct violated the disciplinary rules, including but not limited to, DR 1–102(A)(2), DR 1–102(A)(4), DR 1–102(A)(5), DR 1–

102(A)(6) and DR 5–101 and Canon 9, MCPR. Respondent's charging of clients for expenses not incurred constituted a conversion of client monies and violated the disciplinary rules, including but not necessarily limited to DR 1–102(A)(4) and DR 9–102(B)(4), MCPR.

Pursuant to his authority under Rule 25, the director requested that petitioner provide certain documents and appear for a deposition on June 14, 1984.[2] Refusing to comply with the director's requests, petitioner, on June 6, filed his first petition with this court, requesting a writ of prohibition, a writ of mandamus, or other relief. Petitioner sought an order staying the scheduled deposition pending determination by the federal district court of the constitutionality of Rule 25 and dismissing charges because the board had unreasonably delayed its investigation or dismissing Charge No. 5 because information supporting it was obtained using a subpoena that violated the confidentiality provisions of Rules 9(d) and 20.

On June 19, 1984, the federal district court issued its determination that it could not rule on the constitutionality of Rule 25, finding that such a determination should be made by this court. This decision has been appealed. *Application of the Director of Lawyers Professional Responsibility Board re: N.P. v. United States of America,* Cr. 3–82–32 (D.Minn. June 22, 1984), *affirmed,* 752 F.2d 352 (8th Cir.1984). Thereafter, however, petitioner requested that this court determine the constitutionality of Rule 25.[3]

On July 9, 1984, petitioner submitted a second petition for a writ of prohibition, writ of mandamus, or other relief. In this petition, he objected to the charges filed by the director, claiming portions were vague, duplicitous, inadequately supported, and based upon unconstitutional disciplinary

rules, specifically DR 1–102, DR 2–203, DR 5–105, and DR 5–106.

We deny both of petitioner's requests for extraordinary relief.

■ 1. Initially we note that it is not always clear whether petitioner is seeking a writ of prohibition or a writ of mandamus under each petition, but we find it unnecessary to clarify that in this particular case. Because this action arises from the attorney disciplinary process, this court has original jurisdiction to issue either writ. Although the specific requirements for the writs differ, both require that the director's action or failure to act be improper. *See, e.g.,* Minn.Stat. § 586.01 (1984); R.Civ. App.P. 120; *State ex rel. Anderson v. Bellows,* 287 Minn. 373, 179 N.W.2d 307 (1970); *State ex rel. Ryan v. Cahill,* 253 Minn. 131, 134, 91 N.W.2d 144, 146 (1958). We find no merit in petitioner's claims that the director is acting wrongfully and need not reach the issue whether the other requirements are met.

2. *First Petition*

a. *Claim of undue delay*

■ Petitioner claims that the director has unreasonably delayed the investigation for 5½ years and that the investigation should therefore be dismissed. We calculate that the actual investigation was commenced 4 years before the charges were filed—a lapse of time still substantially longer than the average attorney disciplinary investigation—dating from the director's May 1980 notification to petitioner that because of new evidence the investigation of the Wisconsin physician's complaint was being reopened. Our concern, however, is not directed so much at the length of the delay itself but at whether the delay has resulted in prejudice to the attorney being investigated. *In re Williams,* 221 Minn. 554, 564, 23 N.W.2d 4, 9 (1946).

---

**2.** On June 1, 1984, the director served petitioner with a request for admissions pursuant to Rule 9(c). This request was not challenged by petitioner, although compliance with it has been stayed pending this decision.

**3.** Petitioner made his request in his reply memorandum in support of his motion to strike Exhibit 1, attached to the director's memorandum in opposition to petitioner's June 6 petition. This court denied petitioner's motion on July 6, 1977.

■ A fundamental goal of every disciplinary action is protection of the public. *See, e.g., In re Hansen,* 318 N.W.2d 856, 858 (Minn.1982). Requiring prejudice to an attorney before dismissing an action for unreasonable delay is consistent with that goal. Unless the attorney has been unfairly prejudiced, it would not be in the public interest to dismiss a disciplinary proceeding simply because of a failure to prosecute promptly. Among the many cases consistently adhering to that principal are *Ramirez v. State Bar of California,* 28 Cal.3d 402, 619 P.2d 399, 169 Cal.Rptr. 206 (1980); *In re Bossov,* 60 Ill.2d 439, 328 N.E.2d 309, *cert. denied,* 423 U.S. 928, 96 S.Ct. 275, 46 L.Ed.2d 256 (1975); *Attorney Grievance Comm'n v. Kahn,* 290 Md. 654, 431 A.2d 1336 (1981); *State ex rel. Nebraska State Bar Ass'n v. McArthur,* 212 Neb. 815, 326 N.W.2d 173 (1982); *In re Weinstein,* 254 Or. 392, 459 P.2d 548 (1969), *cert. denied,* 398 U.S. 903, 90 S.Ct. 1689, 26 L.Ed.2d 61 (1970); *In re Wright,* 131 Vt. 473, 310 A.2d 1 (1973).

■ We find no merit in this argument for dismissal. We add, moreover, that not only has there been no showing of prejudice but that much of the reason for delay is attributable to petitioner's own actions since November 1982 in resisting the director's investigation.

### b. *Designating petitioner by name in a subpoena*

■ Petitioner requests that Charge No. 5 be dismissed because he was designated by name in a subpoena duces tecum served upon a banking institution to obtain information supporting that charge. Rule 9(d), by express terms, requires that an attorney

under investigation be designated only by initials.[4] Furthermore, the confidentiality requirements expressed in Rule 20 apply to all disciplinary investigations.

■ There is no question that the full name designation of petitioner is a technical violation of Rule 9(d). Nothing in that rule mandates, however, that the sanction for a violation be dismissal of the charges under investigation, and in this case such a sanction would be most inappropriate.

■ We note at the outset that bank records cannot be obtained without full identification of the bank customer. More importantly, it was not the subpoena that broke the seal of confidentiality, for petitioner himself did so by identifying himself by name in his proceeding in Hennepin County District Court to halt the director's investigation. As we have recognized, rules protecting confidentiality in disciplinary investigations need not be so strictly enforced when the one being investigated has exposed the fact of investigation, such that there is little confidentiality to protect. *See In re Gillard,* 271 N.W.2d 785, 813 (Minn.1978).

### c. *Constitutionality of Rule 25*

Rule 25 of the Rules on Lawyers Professional Responsibility establishes an attorney's duty to cooperate with the director during a disciplinary investigation:

(a) It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director or his staff, the Board, or a Panel, by complying with reasonable requests, including requests to:

---

**4.** Rule 9(d), Rules on Lawyers Professional Responsibility, provides:

(d) Either party may take a deposition as provided by the Rules of Civil Procedure for the District Courts. A deposition under this Rule may be taken before the pre-hearing meeting or within ten days thereafter. The District Court of Ramsey County shall have jurisdiction over issuance of subpoenas and over motions arising from the deposition. The lawyer shall be denominated by initials in any District Court proceeding.

Petitioner also alleges that naming him in the subpoena violates the general confidentiality principles expressed in Rule 20, which in relevant part states:

(a) The files, records, and proceedings of the District Committees, the Board, and the Directors, as they may relate to or arise out of any complaint or charge of unprofessional conduct against or investigation of a lawyer, shall be deemed confidential and shall not be disclosed * * *.

(1) Furnish designated papers, documents or tangible objects;

(2) Furnish in writing a full and complete explanation covering the matter under consideration;

(3) Appear for conferences and hearings at the times and places designated.

(b) Violation of this rule is unprofessional conduct and shall constitute a ground for discipline.

Petitioner challenges this rule on the ground that it is void for vagueness.

■■■ The director contends, with merit, that this issue may not appropriately be raised by petitioner since petitioner's failure to cooperate has not been used as a ground for discipline pursuant to Rule 25, so that irreparable harm has neither occurred nor is imminent. We nevertheless address this issue under the principle that it "will settle a rule of practice affecting all litigants," and is a rule of "apparent importance to the litigants and to the bench and bar as a whole." *Leininger v. Swadner,* 279 Minn. 251, 259, 156 N.W.2d 254, 260 (1968) (quoting *Thermorama, Inc. v. Shiller,* 271 Minn. 79, 84, 135 N.W.2d 43, 46 (1965)). Because the constitutionality of Rule 25 is certainly important to all litigants and the bench and bar as a whole, we think that if the rule is unconstitutional, extraordinary relief is appropriate.[5]

■■■ There is no question that attorneys subject to disciplinary investigations are entitled to due process. *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968). Due process includes adequate notice of the rules with which attorneys are expected to comply. A rule, like a statute, is void for vagueness if it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited or fails to provide sufficient standards for enforcement. *Grayned*

*v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). However, as we held in *Getter v. Travel Lodge,* 260 N.W.2d 177 (Minn.1977), difficulty in construction is not in itself sufficient to set aside a rule, and the rule "should be upheld unless the terms are so uncertain and indefinite that after exhausting all rules of construction it is impossible to ascertain legislative intent." *Id.* at 180 (quoting *Anderson v. Burnquist,* 216 Minn. 49, 53, 11 N.W.2d 776, 778 (1943)).

■■ The specific contention of petitioner is that Rule 25 does not define "reasonable requests." Due process, however, does not require that a rule contain an explicit definition of every term. *See, e.g., In re Gillard,* 271 N.W.2d 785, 809 (Minn. 1978); *Walker v. Corwin,* 210 Minn. 337, 340, 300 N.W. 800, 801 (1941). All that is necessary is that the rule prescribe general principles so that those subject to the rule are reasonably able to determine what conduct is appropriate. *Ex parte Secombe,* 60 U.S. (19 How.) 9, 14, 15 L.Ed. 565 (1856). Rule 25 gives examples of the types of requests that are considered reasonable, and other Rules on Lawyers Professional Responsibility, specifically Rules 8 (authorizing investigatory subpoenas) and 9 (governing requests for admissions, depositions, and evidence admissible at a panel hearing), contain further examples. Moreover, these rules are applicable to attorneys familiar with the type of cooperation generally expected in adversary matters.

■■■ There is merit to petitioner's concern that the rule does not in express terms indicate whether good faith challenges to requests by the director may be deemed a failure to cooperate sufficient to invoke the sanction of the rule. A good faith challenge to a particular request will not be deemed such a failure to cooperate.

---

**5.** Consideration of the issue is not foreclosed even though the decision of the federal district court declining to rule on the issue is currently on appeal to the Eighth Circuit Court of Appeals. As the United States Supreme Court held in *Middlesex Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), federal courts must abstain and allow state courts to resolve issues in attorney disciplinary actions where "an adequate state forum for all relevant issues has already been demonstrated to be available prior to any proceedings on the merits in federal court." *Id.* at 437, 102 S.Ct. at 2524.

Moreover, we hold that the Ramsey County District Court, which, under Rule 9(d), has jurisdiction over motions arising from depositions, also has jurisdiction over motions arising from Rule 25 requests. Such a procedure will provide an adequate safeguard against encroachment on constitutionally protected conduct and against other unreasonable requests. As thus modified, we hold that Rule 25 adequately comports with due process.

### 3. *Second Petition*

#### a. *Challenges to the director's charges*

Petitioner, asking this court to order the director to strike several statements in the charges and make others more definite, contends that the charges are too vague, contradictory, duplicitous, and inadequately supported.

■■■ It is important to note that we are dealing at this stage only with charges and not with a formal petition for discipline. The charges are issued only as part of a preliminary investigation to ascertain if there is probable cause for issuance of a formal petition. *Cf. In re Agerter*, 353 N.W.2d 908, 913 (Minn.1984) (investigation of judge's misconduct). Petitioner will have adequate opportunity to assert such claims if and when the charges mature into a formal petition.

■■■ Given the preliminary nature of the charges issued by the director, we conclude that they need not comply with the stricter standard we would apply to charges in a formal petition but simply must give petitioner a general idea of what actions are being challenged. In considering the specific charges being challenged here, we are also mindful that we are not dealing with "a trap for the unwary" but with charges issued after years of investigation and litigation in related matters. Viewed in light of their informal nature and the extensive background peculiar to this case, we find the charges sufficiently specific to satisfy due process.

#### b. *Constitutional challenges to disciplinary rules DR 1–102(A)(5) and (6)*

Subdivisions 5 and 6 of DR 1–102(A) provide:

(A) A lawyer shall not:

      *      *     *     *     *     *

    (5) Engage in conduct that is prejudicial to the administration of justice.

    (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

Petitioner contends that these subdivisions are unconstitutionally vague.

■■■ The United States Supreme Court recognized long ago that "it is difficult, if not impossible, to enumerate and define, with legal precision, every offense for which an attorney or counsellor ought to be removed." *Ex parte Secombe*, 60 U.S. (19 How.) 9, 14, 15 L.Ed. 565 (1856). We ourselves have, in the comparable situation of applying a legislative standard of judicial conduct, similarly recognized that "necessarily broad standards of professional conduct" are constitutionally permissible. *In re Gillard*, 271 N.W.2d 785, 809 n. 7 (Minn. 1978).

■■■ Disciplinary Rules 1–102(A)(5) and (6) do no more than reflect the fundamental principle of professional responsibility that an attorney, as an officer of the court, has a duty to deal fairly with the court and the client. This duty embraces all of the ethical strictures of the code of professional responsibility. Read in conjunction with the other disciplinary rules, we conclude, as have other courts, that these phrases are sufficiently well defined to satisfy due process. *See In re Keiler*, 380 A.2d 119, 126 n. 7 (D.C.1977); *Committee on Professional Ethics & Conduct v. Durham*, 279 N.W.2d 280, 283 (Iowa 1979); *State v. Nelson*, 210 Kan. 637, 639, 504 P.2d 211, 214 (1972); *Louisiana State Bar Ass'n v. Jacques*, 260 La. 803, 823, 257 So.2d 413, 420 (1972); *In re Rook*, 276 Or. 695, 705–06, 556 P.2d 1351, 1357 (1976); *Howell v. State*, 559 S.W.2d 432, 436 (Tex.Civ.App. 1977).

## DR 2–103

The provisions of DR 2–103(A) deal with solicitation of legal services:

(A) The following prohibitions shall apply to in-person or telephonic communications, and to employment resulting therefrom, but shall not apply to advertisement, written communications or to employment resulting therefrom, unless the communications contain false, fraudulent, misleading or deceptive statements or claims prohibited under DR 2–101.

(1) A lawyer shall not recommend employment as a private practitioner, of himself or anyone associated with him to a non-lawyer who has not sought his advice regarding employment of a lawyer.

(2) A lawyer shall not compensate or give anything of value to any person to recommend or secure, or as a reward for having recommended or secured employment by a client of himself or any lawyer associated with him, with the exception of public relations or advertising services.

(3) A lawyer shall not request any person to recommend employment, as a private practitioner, of himself or anyone associated with him.

Petitioner's claim, that this detailed rule is vague, is patently without merit. His additional claim that the rule, on its face, violates petitioner's right of free speech is no less without merit in view of the decisions of the United States Supreme Court in *In re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), and *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), and our own decision in *In re Discipline of Appert,* 315 N.W.2d 204, 210–15 (Minn.1981). The basis of these decisions is that because of the potential for abuse, the state has a compelling interest in restricting solicitation of the kind proscribed by this rule. Whether the rule, as applied to petitioner, is unconstitutional is not in issue, for at this stage we do not have before us the evidence upon which the charge is based.

## DR 5–105

Under the provisions of DR 5–105(A)–(C):

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

Petitioner does not contest the well-settled principle that an attorney, like other fiduciaries, must avoid being placed in a position of conflicting interests. He bases his vagueness claim primarily upon the rule's failure to provide an objective standard for when "the exercise of his independent professional judgment * * * will be or is likely to be adversely affected," *id.,* by multiple representation.

The specific situations that would violate this rule, as noted with respect to other rules, cannot be cataloged in detail. The words of the rule "will or is likely to be adversely affected" indicate that an attorney sensitive to fiduciary obligations will err, if at all, on the side of rejecting questionable employment.

Therefore the rule is not facially defective. A determination whether, as applied

to petitioner, it violates due process must await introduction of evidence.

### DR 5–106

Under the provisions of DR 5–106:

(A) A lawyer who represents two or more clients shall not make or participate in the making of an aggregate settlement of the claims of or against his clients, unless each client has consented to the settlement after being advised of the existence and nature of all the claims involved in the proposed settlement, of the total amount of the settlement, and of the participation of each person in the settlement.

Petitioner, noting that the charge refers to the making of "block" settlements rather than "aggregate" settlements, contends that the rule is impermissibly vague. Petitioner does not suggest that there is a difference between the two phrases but suggests only that the director's inconsistency indicates a vagueness in the phrase used in the rule.

■ Particularly when viewed in the general context in which the rule was invoked, we find it most difficult to see how petitioner was misled or misinformed. In any event, the complete text of the rule needs no parsing of words and phrases to clearly inform an attorney as to the kind of conduct that is prohibited.[6]

The petitions for extraordinary relief are denied.

COYNE, J., took no part in the consideration or decision of this case.

---

6. Petitioner protests the charge of violating Canon 9, which states, "A LAWYER SHOULD AVOID EVEN THE APPEARANCE OF PROFESSIONAL IMPROPRIETY," on the ground that canons themselves cannot form the basis of a disciplinary action. Whether or not this canon, standing alone, may in any context be a basis for discipline need not be decided now, for it is clear that petitioner is not in this case burdened by the recital of the canon.