JOHN A. ANDERSON v. J. A. A. BURNQUIST AND OTHERS.
MURPHY MOTOR FREIGHT LINES, INC., INTERVENER.[1]

November 5, 1943.

No. 33,583.

[1]Reported in 11 N. W. (2d) 776.

*Hoke, Cobb & Janes,* for appellant.

*J. A. A. Burnquist,* Attorney General, *George T. Simpson,* Special Counsel, for defendants-respondents.

*Jackson & Yackel,* for intervener-respondent.

YOUNGDAHL, JUSTICE.

This action is brought under Minn. St. 1941, c. 555 (Mason St. 1940 Supp. §§ 9455-1 to 9455-16), on behalf of plaintiff and others similarly situated, for a declaratory judgment to determine the rights and duties of the parties under *Id.* § 221.02, subd. 13 (§ 5015-20, subd. [g], the second sentence of which is pertinent and is as follows:

"* * * The terms 'common carrier' and 'contract carrier' shall not apply to any person engaged in the business of operating motor vehicles in the transportation of property exclusively within the zone circumscribed by a line running parallel to the corporate limits of any city or village or contiguous cities and/or villages and 35 miles distant therefrom when such person resides within the zone."

Plaintiff resides on a farm in Meeker county approximately four and one-half miles southeast of the city of Litchfield, Minnesota. He is engaged in a small trucking business, the major portion of which consists of the hauling of livestock for himself and neighboring farmers living in the vicinity of Waverly, Minnesota, into the stockyards located at South St. Paul. Waverly is located approximately 25 miles east of plaintiff's residence, and the city of Minneapolis is 34.4 miles east of Waverly. The cities of Minneapolis, St. Paul, West St. Paul, and plaintiff's market, South St. Paul, are contiguous in the order named.

Plaintiff contends that the provisions of the foregoing statute permit him to determine the zone in which he may legally operate without obtaining a permit or becoming subject to the regulations of the railroad and warehouse commission, provided he resides within the zone selected. Since his residence is within the 35-mile limitation imposed by the statute, he claims that this requirement has been met; and, further, that, since Minneapolis is within his chosen zone, he is privileged to travel on into South St. Paul by reason of the contiguity existing between the two cities.

While thus engaged in the operation of his business within the area here described, defendants have caused plaintiff to be arrested on several occasions, charging him with illegally operating a motor vehicle for hire on the public highways without obtaining a permit to do so and with failure otherwise to conform to the rules and regulations governing common carriers, and have imposed fines and other penalties upon him. Defendants, in an attempt to enforce the law, have contended that plaintiff's interpretation of the statute is erroneous. They maintain that plaintiff was obliged to calculate the zone in which he might legally operate from the city nearest his residence, which would be Litchfield rather than Waverly. If defendants' contention is correct, plaintiff, upon entering Minneapolis and subsequently South St. Paul, would be at a point farther than 35 miles distant from his base—a consequent violation of the controlling statute.

Defendants in their answer join with plaintiff in seeking a construction of the statute, asserting that the provision here considered is vague, uncertain, and indefinite in its language, making interpretation difficult, if not impossible.

By permission, Murphy Motor Freight Lines, Inc. filed its petition in intervention alleging, among other things, that it is a common carrier, subject to the regulations of the railroad and warehouse commission; that plaintiff's construction of the statute is erroneous, leading to confusion and discrimination in its application; that the construction placed thereon by the defendants is likewise incorrect; that neither construction is uniform in its opera-

tion; and it joins in asking for a declaratory judgment. It also contends that there is a failure of uniformity in the operation of the statute which is violative of Minn. Const. art. 4, § 34, and requests that the section of the statute in question be declared unconstitutional and void. It is agreed by all the parties that under either plaintiff's or defendants' construction the areas "circumscribed by a line running parallel to the corporate limits of any city * * * and 35 miles distant therefrom" would differ materially in each instance, depending upon the boundary lines and corporate limits of the particular city used as a base point.

The lower court found that the zones created by the statute vary in shape and extent; that the boundary lines of the zones created in some instances extend from the corporate limits of a city or village to a point 49.49 miles distant, while in other cases such lines extend to a point more than 173 miles from the corporate limits of the city about which the zone is circumscribed; that by reason of this material disparity the statute fails to meet the requirements of uniform operation. A declaratory judgment was entered declaring the questioned portion of § 221.02, subd. 13 (§ 5015-20, subd. [g]), unconstitutional and void, with the further judgment that the remaining portions of the act, as amended, are unaffected by the decree. From this judgment, plaintiff appeals.

Plaintiff's assignments of error relate principally to the lower court's failure to construe the statute according to his contention and the determination by the court that the particular section here considered is unconstitutional. He claims that the provisions thereof are sufficiently definite to support his interpretation; that it is substantially uniform in its operation and therefore a valid enactment. Defendants and intervener strongly urge that the section is unconstitutional because of its lack of uniformity in operation and for the further reason that it is vague and indefinite. We consider first the constitutionality of the section as to its uncertainty and vagueness, since a determination of that issue adversely to plaintiff will dispose of this case.

We must bear in mind at the outset that the statute under con-

sideration is penal in its nature and that plaintiff has been compelled on several occasions to suffer the penalties imposed by the act for alleged violations thereof.

■ It is the duty of courts to pay proper deference to the legislative purpose and to uphold enactments whenever possible. Mere difficulty in construction is not of itself sufficient to set aside a statute. Extreme caution should be exercised by courts before declaring a statute void, and it should be upheld unless its terms are so uncertain and indefinite that after exhausting all rules of construction it is impossible to ascertain the legislative intent. It is fundamental, however, that a court may declare a statute void and inoperative which is so vague and obscure that reasonably minded persons cannot agree upon its meaning. The law does not permit speculation or conjecture in construing an act. It is not the function of the judicial branch of the government to remedy or supply defects in matters committed to the legislature. When called upon to construe a penal statute, courts should not go beyond the clear meaning of the statute and spell out something not plainly indicated by the language used. Courts are obliged to exhaust the rules of construction to ascertain the legislative intent. If after such tests are applied no reasonable or sensible meaning can be given the statute, it is void. 2 Dunnell, Dig. & Supp. § 2417a; Connally v. General Const. Co. 269 U. S. 385, 46 S. Ct. 126, 70 L. ed. 322, and annotated cases.

■ "* * * a statute is unconstitutional for indefiniteness if it requires or forbids in terms so vague that men of common intelligence must guess at its meaning and differ as to its application." State v. Eich, 204 Minn. 134, 136, 282 N. W. 810, 812.

See also Connally v. General Const. Co. *supra;* State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753; State v. Parker, 183 Minn. 588, 237 N. W. 409. The general rules to be applied in determining whether a statute is unconstitutional due to vagueness and uncertainty are thoroughly discussed in State v. Northwest

Poultry & Egg Co. *supra,* and further elaboration would seem to be unnecessary here.

The particular portion of the statute to be considered is that which reads: "within the zone circumscribed by a line running parallel to the corporate limits of any city or village or contiguous cities and/or villages and 35 miles distant therefrom when such person resides within the zone." Is this language sufficiently definite and certain to determine the intention of the legislature? Should the base of operations be computed from the municipality nearest the residence of the operator, as claimed by defendants, or can the base be selected by the operator so long as he lives within the zone, as urged by plaintiff? Or, as contended by intervener, does the language mean that a zone has been established around each municipality and that within such zone the operator is free from regulation so long as he resides therein? We are confronted with three possible, but extremely different, interpretations. The language is so indefinite and uncertain that reasonable men might well differ in their conclusions, and it appears that any effort to determine what the legislature intended would be based upon sheer speculation. What interpretation was intended to be given the word "contiguous" as used in the act creates additional obscurity. Does it apply solely to the base of operations or the terminus thereof, or both? The commission has interpreted it to apply to both base and terminus, whereas intervener contends that it should be restricted to the base only. A further difficulty arises when an attempt is made to understand the language of the statute and determine what is meant by "the zone circumscribed by a line running parallel to the corporate limits * * *." An engineer for the commission testified that it would be impossible to "circumscribe" lines running "parallel" to the corporate limits. We agree that if we are to apply the commonly accepted definition of the word "circumscribe," which is "to draw a line around; to encircle," this would be a mathematical impossibility. Webster's New International Dictionary (2d) 1934. To make such an attempt would defeat the provision of the statute that the lines be parallel to the

corporate limits. If the word "circumscribed" is disregarded, the result would be equally violative, since the parallel lines would of necessity be extended to the point of intersection, thereby creating zones of such irregular shapes and sizes that in many instances the zone termini would be substantially farther than the 35-mile limitation imposed by the act. It is apparent that the difficulties are immeasurably increased when applied to cities having particularly irregular boundaries and corporate limits. The present litigation and the enforcement history of this section of the statute indicate that the uncertainty and vagueness of the language have made a uniform and successful operation thereof impossible.

We are cognizant of the fact that many penal statutes of necessity must be broad in their scope and character for the reasons we assigned in State v. Eich, 204 Minn. 136, 282 N. W. 812, *supra,* in this language: "Because of the complexity of our social organization and the attendant difficulty of successfully enumerating each specific forbidden act, the legislature by necessity has had to enact many criminal statutes which are broad in their scope and character." The section of the statute here under consideration, however, does not fall within that class of cases where exactness of definition is impracticable. The "zone" in which operators are to be exempt from regulation can be clearly defined, as is evident in other jurisdictions where exemption zones have been definitely prescribed. Continental Baking Co. v. Woodring, 286 U. S. 352, 52 S. Ct. 595, 76 L. ed. 1155, 81 A. L. R. 1402; Public Service Comm. of Wyoming v. Grimshaw, 49 Wyo. 158, 53 P. (2d) 1, 109 A. L. R. 534; Riley v. Lawson, 106 Fla. 521, 143 So. 619; Portland Van & Storage Co. v. Hoss, 139 Or. 434, 9 P. (2d) 122, 81 A. L. R. 1136; Louis v. Boynton (D. C.) 53 F. (2d) 471; State v. King, 135 Me. 5, 188 A. 775. In these instances, exemptions for the small operators who use the public highways in but a limited degree in their business have been provided which have been free from the criticism of vagueness and uncertainty. Where the legislature has failed to describe the exemption zones with sufficient clarity and exactness, the statute has been declared void for vagueness. In re

Schmolke, 199 Cal. 42, 248 P. 244. Applying to the provision of the statute before us the test approved by this court that "a statute is unconstitutional for indefiniteness if it requires or forbids in terms so vague that men of common intelligence must guess at its meaning and differ as to its application" (State v. Eich, 204 Minn. 136, 282 N. W. 812, *supra*), we conclude that it is so vague and uncertain as to be impossible of interpretation and is therefore void.

In reaching this conclusion we have not been unmindful that the legislature clearly intended some exemption for that class of small truck operators whose use of the public highways in their business is limited, and we are aware of the salutary purpose of such a provision. The difficulty in executing this provision has arisen because the legislative intent was not couched in language sufficiently clear to be reasonably susceptible of ascertainment. Despite the desirability of such legislation, it is not within our province to rewrite this provision and thus by judicial legislation speculate on what "zone" of operations was intended to be exempted. .The curing of this defect is a task for the legislature to accomplish within its field of governmental function.

Affirmed.

MR. JUSTICE LORING, absent because of accidental injuries, took no part in the consideration or determination of this case.

[1]Reported in 11 N. W. (2d) 769.