**Myles M. REOME, Petitioner,**

v.

**Leonard W. LEVINE, Commissioner of Public Welfare, and Steven P. Doheny, Medical Director, St. Peter Regional Treatment Center, Respondents.**

Civ. No. 4–86–258.

United States District Court,
D. Minnesota,
Fourth Division.

March 1, 1988.

Jon Duckstad, St. Paul, Minn., for petitioner Myles Reome.

John L. Kirwin, Sp. Asst. Atty. Gen., St. Paul, Minn., for respondents.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court on appeal from a report and recommendation of United States Magistrate J. Earl Cudd, dated January 8, 1988. Petitioner, Myles M. Reome, petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Magistrate Cudd recommended that petitioner's application be granted. Respondents object to this recommendation.

Based upon a *de novo* review of the record herein, the Court adopts in all respects the magistrate's report and recom-

mendation dated January 8, 1988. 28 U.S.C. § 636(b)(1)(B); Rule 72(b), Fed.R.Civ.P.; Local Rule 16(C)(2). Accordingly, IT IS ORDERED that:

Petitioner's application for a writ of habeas corpus is granted.

## REPORT AND RECOMMENDATION

J. EARL CUDD, United States Magistrate.

This matter is before the Court on Myles Reome's petition for writ of habeas corpus under 28 U.S.C. § 2254. Reome challenges the constitutionality of the discharge standard for persons committed as mentally ill and dangerous under Minnesota's Commitment Act. Reome is currently confined to the Minnesota Security Hospital where he was committed as mentally ill and dangerous in 1982. He contends his continued confinement is unconstitutional because, although he has an anti-social personality, he is not mentally ill as that term is defined in the statute, nor is he dangerous as a result of mental illness. Respondents oppose granting the writ because Reome continues to be dangerous due to his personality disorder. For the reasons set forth below, the Court recommends the writ issue.

## BACKGROUND

Myles Reome was sent to the Minnesota Security Hospital for an evaluation in the spring of 1982. (T. 7)[1] At the time of his evaluation, he was being held on a burglary charge. (T. 57–58) The staff at the hospital recommended that Reome not be committed because he was not mentally ill. (T. 9)

At the commitment hearing in Hennepin County Probate Court in June 1982, two court-appointed psychologists diagnosed Reome as having an anti-social personality with a paranoid trend and recommended his commitment as mentally ill and dangerous. (See Report of Examiners in Appendix to Respondents' Court of Appeals brief, Attachment 6 to Respondents' Memorandum, at page B–51 (R.App. at B–51)). The evidence adduced at the hearing showed Reome had physically assaulted his common-law wife and had threatened to kill the operators of several battered women's shelters. (T. 46, 68)

The committing court found that Reome suffered from a major mental illness, namely, anti-social personality with paranoid trend, and that he demonstrated impaired impulse control, impaired ability to appreciate the possible consequences of his acts, and impaired ability to experience sufficient anxiety to prevent his committing certain acts. (See Findings of Fact, Conclusions of Law, and Judgment on Final Determination, R.App. at B–31, 34.) The court noted Reome's desire to be treated for his mental problems, rather than to submit to criminal proceedings, and acknowledged that a penal setting would not be appropriate for or conducive to Reome's rehabilitation. (See id., R.App. at B–36.) The court concluded that Reome presented a clear and imminent danger to the public and ordered his commitment as mentally ill and dangerous pursuant to Minnesota's Hospitalization and Commitment Act, Minn.Stat. ch. 253A.[2]

---

1. "T." refers to the transcript of the hearing held before the Minnesota Supreme Court Appeal Panel on January 6, 1984. The transcript is attached as Exhibit C to Reome's petition.

2. This Act has since been repealed. See 1982 Minn. Laws, ch. 581 (creating Minnesota Commitment Act of 1982, Minn.Stat. ch. 253B). At the time of Reome's commitment, the Act defined a mentally ill person as

> any person diagnosed as having a psychiatric or other disorder which substantially impairs his mental health and as being in need of treatment or supervision. For the purpose of involuntary commitment of a person as mentally ill it is necessary for the court to find:

> (a) that the person is a mentally ill person, and (b) that involuntary hospitalization is necessary for the welfare of the person or the protection of society as defined in section 253A.07, subdivision 17, clause (a).

Minn.Stat. § 253A.02, subd. 3 (1980). Under the current Act, a mentally ill person means any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which (a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and (b) poses a substantial likelihood of physical harm to self or others

Less than a year later, Reome petitioned for discharge and the matter was heard before a special review board. *See* Minn. Stat. § 253B.18, subd. 4. Following the hearing, the board recommended discharge be denied. (*See* Special Review Board's Findings of Fact and Recommendation, R.App. at B–25.) The Commissioner of Public Welfare adopted the board's recommendation and denied discharge. Reome then appealed to the state's Supreme Court Appeal Panel (appeal panel), composed of three probate judges, for a *de novo* hearing on his discharge petition. *See* Minn.Stat. § 253B.19.

At this hearing, Dr. Brian Gottlieb, Medical Director at the Minnesota Security Hospital, and Dr. Donald Anderson, a licensed psychologist who had initially examined Reome in 1982, both testified that Reome suffers from an anti-social personality, which is a character disorder, but that he is not mentally ill as that term is defined under Minnesota law. (T. 8–9, 43) Dr. Gottlieb refused to predict whether Reome would be dangerous to the public if released, but indicated that Reome would benefit from continued treatment.[3] (T. 16, 12) Dr. Anderson testified that Reome's personality disorder makes him dangerous

because he lacks the ability to control his impulsive behavior. (T. 46) Anderson also testified that treatment would probably be unavailing and that Reome's behavior would change only with the normal aging process. (T. 44)

Based on the testimony and evidence presented, the appeal panel, with one judge dissenting, concluded that Reome should be discharged because he was not dangerous as a result of mental illness. (*See* Supreme Court Appeal Panel's Findings and Order, R.App. at B–17.) The Commissioner of Public Welfare appealed this decision to the Minnesota Court of Appeals, and after extended appellate proceedings,[4] the matter was eventually remanded to the appeal panel for further findings consistent with the statutory discharge section, which provides:

> A person who has been found by the committing court to be mentally ill and dangerous to the public shall not be discharged unless it appears to the satisfaction of the commissioner, after a hearing and a favorable recommendation by a majority of the special review board, that the patient is capable of making an acceptable adjustment to open society, is no

---

as demonstrated by (i) a recent attempt or threat to physically harm self or others, or (ii) a failure to obtain necessary food, clothing, shelter or medical care, as a result of the impairment. This impairment excludes (a) epilepsy, (b) mental retardation, (c) brief periods of intoxication caused by alcohol or drugs, or (d) dependence upon or addiction to any alcohol or drugs.

Minn.Stat. § 253B.02, subd. 13 (1986). The Act further defines a "person mentally ill and dangerous to the public" as

a person (a) who is mentally ill; and (b) who as a result of that mental illness presents a clear danger to the safety of others as demonstrated by the facts that (i) the person has engaged in an overt act causing or attempting to cause serious physical harm to another and (ii) there is a substantial likelihood that the person will engage in acts capable of inflicting serious physical harm on another. A person committed as a psychopathic personality as defined in section 526.09 is subject to the provisions of this chapter that apply to persons mentally ill and dangerous to the public.

*Id.,* subd. 17.

**3.** Reome's treatment consisted of his participation in Project ADAPT, a program designed for persons who are either not mentally ill or

whose mental illness is in substantial remission, but who suffer from a personality or character disorder. (T. 13) The program is premised on a learning theory: Because antisocial behavior is learned, it can be "unlearned" as well. (T. 13) The program involves ten steps whereby patients are rewarded with increased privileges for their improved behavior. (T. 23–24) The ultimate goal is to return patients to society. At the time of the hearing before the appeal panel, Reome was at step one in the program, having been recently demoted for unauthorized possession of a razor. (T. 14, 24)

**4.** The Minnesota Court of Appeals affirmed the order granting discharge: *Reome v. Levine,* 350 N.W.2d 428 (Minn.Ct.App.1984) ("Reome I"). The Minnesota Supreme Court granted review for the sole purpose of remanding for reconsideration in light of its recent decision in *Enebak v. Noot,* 353 N.W.2d 544 (Minn.1984): *Reome v. Levine,* 361 N.W.2d 29 (Minn.1985). On remand, the Court of Appeals reversed the order granting discharge and remanded for additional findings: *Reome v. Levine,* 363 N.W.2d 107 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. April 18, 1985) ("Reome II").

longer dangerous to the public, and is no longer in need of inpatient treatment and supervision.

In determining whether a discharge shall be recommended, the special review board and commissioner shall consider whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the patient in adjusting to the community. If the desired conditions do not exist, the discharge shall not be granted.

Minn.Stat. § 253B.18, subd. 15. In remanding, the Minnesota Court of Appeals stated: "Reome may not be discharged until it is determined that he meets all of the requirements set forth in section 253B.18, subd. 15." *Reome II*, 363 N.W.2d at 108.

Based on its review of the January 1984 hearing, the appeal panel made amended findings that Reome:

* has an anti-social personality, but it not mentally ill within the meaning of the statute;

* is capable of making an acceptable adjustment to open society;

* is apt to be involved in criminal behavior in the future and is dangerous to the public, and

* is no longer in need of inpatient treatment and supervision.

(*See* Supreme Court Appeal Panel's Amended Findings of Fact, Conclusions and Order, Attachment B to Reome's petition.) The panel concluded that under the statutory criteria, Reome was not entitled to discharge because he continued to be dangerous to the public.

Reome appealed this ruling, arguing that the discharge provision was unconstitutional because it permitted continued confinement based on dangerousness, irrespective of the mental illness that precipitated the commitment. The Minnesota Court of Appeals upheld the constitutionality of the provision, noting: "The existence of dangerousness is the essential element justifying confinement and denial of Reome's petition for discharge." *Reome v. Levine*, 379 N.W.2d 208, 212 (Minn.Ct.App.1985) ("Reome III"). The Minnesota Supreme

Court denied further review. Reome then filed this petition for writ of habeas corpus.

## DISCUSSION

The Court notes initially that in a habeas proceeding under 28 U.S.C. § 2254, the state court's factual determinations are, with certain exceptions, presumed to be correct. 28 U.S.C. § 2254(d); *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1982). Neither Reome nor respondents challenges the factual findings made by the Supreme Court Appeal Panel. Reome does not contest the finding that he is dangerous to the public, nor do respondents attack the findings that Reome no longer needs treatment and that he is not mentally ill as that term is defined by Minnesota law.

The issue presented here is a question of law. Reome claims the discharge provision is unconstitutional on its face and as applied to him because the provision authorizes confinement in mental hospitals of persons who are not mentally ill, not in need of treatment and supervision, capable of making an acceptable adjustment to open society, but who nevertheless pose a danger to the public. Reome argues that confinement based solely on dangerousness unrelated to mental illness amounts to preventive detention and violates the due process and equal protection guarantees of the fourteenth amendment.

 "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). Whether states act pursuant to their *parens patriae* interest in promoting the welfare of the mentally ill, or pursuant to their police power interest in preventing violence and maintaining order, states may not curtail substantive or procedural due process protections in exercising such powers. *Project Release v. Prevost*, 722 F.2d 960, 971 (2d Cir.1983). Substantive due process requires "that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*,

406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972). The purpose of civil commitment "is to treat the individual's mental illness and protect him and society from his potential dangerousness." *Jones v. United States*, 463 U.S. 354, 368, 103 S.Ct. 3043, 3051, 77 L.Ed.2d 694 (1983). A patient is entitled to release, however, "when he has recovered his sanity or is no longer dangerous." *Id.*

■ Applying these principles here, the Court finds the discharge provision in Minn.Stat. § 253B.18, subd. 15 is unconstitutional as applied to Reome. A person may be committed as mentally ill and dangerous only upon clear and convincing evidence that the person is mentally ill, as defined in the statute, and dangerous *as a result of that mental illness. See* Minn. Stat. § 253B.02, subd. 13, 17; § 253B.18, subd. 1. Before the same person can be discharged, however, the statute requires an independent showing that the patient "is no longer dangerous to the public," *id.*, subd. 15, even if the patient is not mentally ill or in need of treatment and supervision, and is capable of making an acceptable adjustment to society. Such a requirement destroys the constitutional basis for confinement, i.e., that the nature and duration of confinement bear a reasonable relation to the purpose underlying the commitment. *Jackson*, 406 U.S. at 738, 92 S.Ct. at 1858.

■ Confinement is not punitive, but rather is premised on the need to treat the patient's illness, as well as the need to protect the public from potentially dangerous behavior. *Jones*, 463 U.S. at 368, 103 S.Ct. at 3051. Dangerousness derives from the existence of mental illness. Once the patient no longer requires treatment *or* is no longer dangerous to society, due process demands release. *Id.; Enebak v. Noot*, 353 N.W.2d at 547 (construing the provisional discharge criteria of Minn.Stat. § 253B.18, subd. 7). Confinement based on what amounts to a propensity for dangerousness unrelated to mental illness and for which no treatment is required "is nothing more than preventive detention, a concept foreign to our constitutional order." *In re*

*Torsney*, 47 N.Y.2d 667, 420 N.Y.S.2d 192, 201, 394 N.E.2d 262, 271 (1979).

Respondents rely on *Minnesota ex rel. Pearson v. Probate Court*, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940), arguing that dangerousness need not be rooted in mental illness. *See O'Connor v. Donaldson*, 422 U.S. 563, 583, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (Burger, C.J., concurring) ("[I]n the exercise of its police powers a State may confine individuals solely to protect society from the dangers of significant anti-social acts or communicable disease."). *Pearson* involved a challenge to Minnesota's statute authorizing commitment of sexual psychopaths. The Supreme Court upheld the validity of the statute, noting that the state court's construction expressly limited the application to situations where there is

proof of a "habitual course of misconduct in sexual matters" on the part of the persons against whom a proceeding under the statute is directed, which has shown "an utter lack of power to control their sexual impulses," and hence that they "are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire."

*Pearson*, 309 U.S. at 274, 60 S.Ct. at 526. In such situations confinement is reasonably based on evidence of past conduct that shows the state's need to act is especially great.

Significantly, the statute does not operate on "every person guilty of sexual misconduct nor even to persons having strong sexual propensities." *Id.* at 273, 60 S.Ct. at 525. Any such application would, of course, raise serious constitutional questions. The statute works instead to protect society in extreme cases where the danger is clearly identified and the evidence clearly establishes the need for such protection.

■ In contrast to *Pearson*, the statutory provision as applied here is not restricted to those cases where the state's need to act is especially great. The provision is directed against persons found to be dangerous to the public; however dangerousness is not to be given its ordinary

meaning. The statute identifies dangerousness by conduct that manifests an underlying mental illness. *See* Minn.Stat. § 253B.02, subds. 13, 17. The statute as applied, however, recognizes no such causal link, and neither does it recognize degrees of harm. Here, Reome's dangerousness is based on a finding that he is *apt* to be involved in criminal behavior. Respondents use the mere possibility of misconduct to justify Reome's continued commitment. This application of the statute is unconstitutional because dangerousness is not confined to the class identified as constituting a dangerous element, i.e., those whose mental illness results in conduct that threatens their own safety or the safety of others.

Respondents' reliance on *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), to justify confinement based on dangerousness is also misplaced. In *Salerno*, the Supreme Court upheld the constitutionality of the Bail Reform Act, which authorizes pretrial detention of an arrestee where no release conditions "will reasonably assure ... the safety of any other person and the community." 18 U.S.C. § 3142(e). The Court found that "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 107 S.Ct. at 2102. The Act is narrowly focused, however, and "operates only on individuals who have been arrested for a specific category of extremely serious offenses." *Id.* at 2103. Moreover, the government must establish probable cause to believe the arrestee committed the crime and demonstrate by clear and convincing evidence that no conditions of release will assure the safety of the community. *Id.* Further, "the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act." *Id.* at 2101 (footnote omitted).

■ Unlike the Bail Reform Act, the discharge criteria here permit the indefinite confinement of persons who have never been charged with a crime. The discharge provision effectively transforms mental hospitals into penal institutions where persons who are not mentally ill are held, not because they committed a crime, but because they might at some future time be involved in criminal behavior. Confinement on this basis bears no rational relation to the purpose for commitment and clearly interferes with rights "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 324–25, 58 S.Ct. 149, 151–52, 82 L.Ed. 288 (1937).

■ Respondents finally argue that Reome's confinement is justified because he continues to suffer from the same personality disorder that was present when he was originally committed and that manifests itself in antisocial behavior. This argument, however, ignores the uncontested finding by the appeal panel that Reome is not mentally ill within the meaning of the statute, which defines a mentally ill person as one having "a substantial psychiatric disorder ... which grossly impairs judgment ..." Minn.Stat. § 253B.02, subd. 13. The testimony of Drs. Gottlieb and Anderson at Reome's discharge hearing supports the appeal panel's finding. Both doctors stated that Reome's disorder does not fall within the statutory definition.

Further, neither doctor suggested that Reome needed continuing treatment. While Dr. Gottlieb stated Reome would likely benefit from more treatment, he also stated that a clean break from the institution was the preferable way to proceed. Dr. Anderson felt treatment would be entirely unavailing and that Reome's behavioral problems would fade only with age. Perhaps if these doctors had indicated a need for continuing treatment, Reome's confinement would seem more reasonable, since treatment is an essential element justifying confinement. *Jones*, 463 U.S. at 368, 103 S.Ct. at 3051. This Court, however, cannot overturn the factual findings in this case, which are that Reome no longer needs treatment and is not mentally ill within the meaning of the statute.

■ Mental illness and dangerousness are interdependent elements justifying commitment. In *O'Connor v. Donaldson*, the Supreme Court held that a state may not constitutionally confine mentally ill persons involuntarily "if they are dangerous

to no one and can live safely in freedom." 422 U.S. 563, 575, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975). Similarly, neither may a state involuntarily confine someone who is not mentally ill, but possibly dangerous in the ordinary sense of the word. Confinement originally founded upon a constitutionally adequate basis cannot constitutionally continue after that basis no longer exists. *O'Connor*, 422 U.S. at 574–75, 95 S.Ct. at 2493–94. Whatever basis that may have existed for Reome's commitment has now ceased. His confinement based on dangerousness unrelated to mental illness is an unconstitutional application of the statutory discharge criteria, and he must be released.

## RECOMMENDATION

For the reasons set forth above, Reome's confinement may not constitutionally continue, and the Court RECOMMENDS that the petition for writ of habeas corpus be GRANTED.