**In the Matter of Gerald W. WOLF.**

**No. C2-91-870.**

Supreme Court of Minnesota.

June 26, 1992.

---

Michael O. Freeman, Hennepin County Atty., Gayle C. Hendley–Zappia, Asst. County Atty., Minneapolis, for appellant.

Thomas Bennett Wilson, III, Wilson Law Firm, Edina, for respondent.

GARDEBRING, Justice.

The state appeals from a decision of the court of appeals which held that under Minn.Stat. § 253B.09, subd. 1 a chemically dependent person who refuses all treatment may not be involuntarily committed because no facility or program is capable of meeting the patient's needs. We reverse.

The facts are undisputed. Respondent has been admitted to the Hennepin County Detoxification Center 226 times, including 47 times from February 1990 to February 5, 1991. During that period, he spent about half of the year in the detoxification center. Respondent has no permanent address; when he is not in the detoxification unit, he stays at the home of relatives or friends. Respondent has no job or property; his sole source of support is public assistance. Respondent's admissions to detox have been at his own request, at the initiative of police officers or occasionally by referral from a hospital emergency room. Respondent has attended various chemical dependency treatment programs in the past, either voluntarily or through commitment, but has not successfully completed any of them. He previously has been committed to the Fergus Falls center and four times left without authorization. He testified and told doctors that he would leave again if committed. After his commitment to Fergus Falls in this case, respondent refused to cooperate and was provisionally discharged on May 16, 1991.[1]

This case arose after police brought respondent to the Hennepin County detoxification unit on February 5, 1991. On February 6, the state petitioned the district court to have respondent involuntarily committed. On February 12, respondent underwent a court-ordered examination, in which the examiner found that in the previous month respondent had missed appointments for medical treatment of a skin graft where he had suffered a burn. At trial, respondent testified that the injury was healing and that he had not needed medical attention since January 13. Asked what he wanted to do, respondent testified: "I just want to be free, back on the street." He said the only help he wants is to get to the detox unit if he gets drunk and cannot make it back to wherever he is staying. The trial court committed respondent to Fergus Falls, which recently has added a locked unit. The court of appeals reversed, prompting this appeal.

Judicial commitments are governed by Minn.Stat. § 253B.09, subd. 1 (1990), which provides:

If the court finds by clear and convincing evidence that the proposed patient is a mentally ill, mentally retarded, or chemically dependent person and * * * that there is no suitable alternative to judicial commitment, the court shall commit the patient to the least restrictive treatment program which can meet the patient's treatment needs consistent with section 253B.03, subdivision 7 [pertaining to treatment plans and a patient's right to proper care and treatment aimed at a permanent cure]. In deciding on the least restrictive program, the court shall consider a range of treatment alternatives including, but not limited to, community-based nonresidential treatment, community residential treatment, partial hospitalization, acute care hospital, and regional treatment center services. The court shall also consider the proposed

---

1. The problem presented by this case may appear to be moot, since Wolf has already been involuntarily committed and subsequently discharged. However, given Wolf's history of alcohol abuse, the county may again need to resort to involuntary commitment procedures to help him. Therefore, the problem presented here is not moot because "it is one capable of repetition, yet evading review." *See In re D.M.C.,* 331 N.W.2d 236, 237 (Minn.1983).

patient's treatment preferences and willingness to participate in the treatment ordered. The court may not commit a person to a facility or program that is not capable of meeting the patient's needs.

The legislature has defined a chemically dependent person as:

> any person (a) determined as being incapable of self-management or management of personal affairs by reason of the habitual and excessive use of alcohol or drugs; and (b) whose recent conduct as a result of habitual and excessive use of alcohol or drugs poses a substantial likelihood of physical harm to self or others as demonstrated by (i) a recent attempt or threat to physically harm self or others, (ii) evidence of recent serious physical problems, or (iii) a failure to obtain necessary food, clothing, shelter, or medical care.

Minn.Stat. § 253B.02, subd. 2 (1990). Applying these statutes, the trial court found that respondent is a chemically dependent person, unable to manage his affairs by reason of habitual and excessive use of alcohol. The court further found that respondent's chemical dependency combined with his neglect of his burn injury shows a substantial likelihood of physical harm. The trial court found no suitable alternative disposition and that the least restrictive, appropriate, available placement was the Fergus Falls Regional Treatment Center because it was the only facility secure enough to hold respondent.

The court of appeals reversed on the grounds that because respondent consistently has refused treatment and has vowed to refuse treatment again, his present commitment is inconsistent with the section of the statute that reads: "The court may not commit a person to a facility or program that is not capable of meeting the patient's needs." *In re Wolf,* No. C2–91–870, slip op. at 3, 1991 WL 198449 (Minn.App. Oct. 8, 1991) (quoting Minn.Stat. § 253B.09, subd. 1). That decision was in contrast to the reasoning of an earlier court of appeals decision, which stated: "It would be incongruous for us to permit a proposed patient to defeat all commitment proceedings merely by refusing to be examined." *In re Rice,* 410 N.W.2d 907, 910 (Minn.App.1987), *pet. for rev. denied* (Minn., Oct. 28, 1987).

■ We believe it would be equally incongruous to allow respondent to defeat commitment proceedings merely by refusing to cooperate. By their very nature, involuntary commitments are not a collaborative, negotiated process between the state and the committed person. Involuntary commitments are obtained against the subject's will. Under the reasoning of the decision below, any mentally ill, mentally retarded or chemically dependent person who is capable of articulating a preference could avoid commitment merely by promising to refuse treatment. That would turn the statute on its ear and make involuntary commitments virtually impossible. That is not the intent of the legislative scheme authorizing involuntary commitments, and we reverse.

Under Minn.Stat. § 253B.09, subd. 1, the court may not commit a patient to a facility or program that is not capable of meeting his or her needs. A patient's needs are met by "proper care and treatment, best adapted, according to contemporary professional standards, to rendering further custody, institutionalization, or other services unnecessary." Minn.Stat. § 253B.03, subd. 7. In one sense, what appellant needs is a chemical dependency treatment program which can be successful without his cooperation. Short of that, a program like that at Fergus Falls, targeted to the long-term, chronic alcoholic, may be deemed to meet the standard of subdivision 7. It may well be that the Fergus Falls staff cannot persuade respondent to change his lifestyle, but commitment to the Fergus Falls program will assure that he gets proper medical attention and at least temporary safety from the devastating effects of his illness.

■ Long term, of course, no treatment program will work unless the person being treated cooperates, and respondent has made it clear that he has no intention of doing that. But the state would be adopting a pessimistic outlook, indeed, if it were to say that chemically dependent people

who vow to resist treatment should be taken at their word and written off. The legislature has chosen a more optimistic approach, which assumes that chemically dependent persons *may* be successfully treated, even if there is *initial* resistance. Respondent may never agree to be treated, but under Minn.Stat. §§ 253B.09, subd. 1 and 253B.03, subd. 7, the state has the power to keep trying.

Reversed.