**In re Phillip Jay BLODGETT, Alleged Psychopathic Personality.**

**No. C9–92–844.**

Court of Appeals of Minnesota.

Sept. 15, 1992.

Review Granted Nov. 3, 1992.

Richard C. Ilkka, Stillwater, for appellant Blodgett.

Richard M. Arney, Washington County Atty., Douglas G. Swenson, Susan Steffen Tice, Asst. County Attys., Stillwater, for respondent County.

Hubert H. Humphrey, III, Atty. Gen., Kathy Meade Hebert, Cheryl W. Heilman, Sp. Asst. Attys. Gen., St. Paul, for respondent-intervenor Atty. Gen.

John E. Grzybek, Richard K. Ellison, St. Paul, for amicus Minnesota Civil Liberties Union.

Deborah M. Gilman, Minnesota Civil Liberties Union, Minneapolis, of counsel for amicus MCLU.

Considered and decided by CRIPPEN, P.J., and SCHUMACHER and SCHULTZ,[*] JJ.

## OPINION

SCHUMACHER, Judge.

Phillip Jay Blodgett was committed for an indeterminate period as a psychopathic personality, and he appeals. This court granted motions by the Minnesota Civil Liberties Union to file a brief as an amicus curiae and by the attorney general to intervene. This court also allowed the MCLU and the state to file supplemental references to the record after oral argument. We affirm.

## FACTS

Blodgett has been found guilty of three separate felony charges involving criminal sexual conduct. Prior to the first felony offense, he was in jail as a result of convictions for burglary and obstructing legal process. He was released from jail at approximately 6 a.m. on September 18, 1985. At approximately 9 a.m. the same morning, he broke into the home owned by the parents of his former girlfriend, entered the bedroom where his former girlfriend was asleep, and committed a violent sexual assault on her. Blodgett was convicted of first degree burglary for entering the dwelling with intent to commit criminal sexual conduct.

Blodgett was enrolled in a pre-release program at the Minnesota Correctional Facility–Lino Lakes. While released for the day, he committed another sexual assault. Shortly after 12:30 a.m. on May 9, 1987, he violently attacked a woman as she was entering her car after grocery shopping. As she resisted and screamed for help, Blodgett asked her if she wanted to die. Blodgett was convicted of criminal sexual conduct in the second degree for this incident.

On June 15, 1987, Blodgett was enrolled in a treatment program at a halfway house on supervised release. He violently sexually assaulted a randomly-picked 16–year–old girl. Blodgett was convicted of criminal sexual conduct in the second degree.

Blodgett has repeatedly refused to enter or to complete treatment programs for sexual offenders. Blodgett has polysubstance dependency, but has not obtained treatment.

A petition was filed to commit Blodgett as a psychopathic personality, and a hearing was held. At the hearing, psychologists testified as to Blodgett's condition. The trial court specifically adopted as fact all of the experts' reports, except for the conclusion by one psychologist that Blodgett is not a psychopathic personality. Based on these reports, the trial court made the following findings. Blodgett has an uncontrollable desire for sexual activities, which may not always be spurred on by prior contemplation, but is uncontrollable when he begins to engage in violent behavior. He has been untreated in the past and it is highly likely he will sexually attack another woman if released and not treated. He is a person who has a psychopathic personality, and there exists in him such conditions of emotional instability, impulsiveness of behavior, lack of customary standards of good judgment, and a failure to appreciate the consequences of personal acts so as to render him irresponsible for

---

[*] Retired judge of the district court, serving as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

personal conduct with respect to sexual matters, and thereby dangerous to other persons. The trial court found no reasonable less restrictive alternative commitment other than commitment as a psychopathic personality to the Minnesota Security Hospital.

The security hospital submitted the required 60–day report. Blodgett was diagnosed as experiencing polysubstance abuse and an antisocial personality disorder. Given Blodgett's antisocial personality disorder, coupled with his history of criminal sexual conduct, the hospital found he continues to represent a danger to society because the potential for him to again engage in antisocial acts is relatively high. The report further stated the security hospital could offer Blodgett treatment, but the prognosis that such treatment would actually significantly alter his attitudes and behaviors was poor. The security hospital treatment team did not support the psychopathic personality commitment because it determined Blodgett was not an emotionally unstable individual, his antisocial acts were not impulsive, and Blodgett understood the consequences of his actions.

A hearing was held on whether Blodgett's commitment as a psychopathic personality should be indeterminate. Dr. James L. Jacobson, who performed a psychological examination on Blodgett prior to the first hearing and a second one prior to the second hearing, diagnosed Blodgett as having an antisocial disorder, a substance abuse disorder, and a psychopathic personality. He testified his opinion that Blodgett met the standards for commitment as a psychopathic personality was unchanged. Dr. Michael Farnsworth from the security hospital testified as to the reasons the hospital did not support commitment.

Based upon this testimony, the trial court made the following findings. Blodgett is emotionally unstable. The security hospital testing indicated he exhibited emotional problems, including feelings of inadequacy, depressive feelings, crying in private, low self-esteem, and an inability to cope with feelings. He displayed an impulsiveness of behavior in his sexual offenses, in that his sexual offenses were committed without control but perhaps with some level of awareness. He showed a lack of customary standards of good judgment because one of his criminal sexual convictions involved a 16–year–old girl, he was on parole at the time of the offenses, and he was using alcohol. The existence of the combination of the above conditions rendered Blodgett irresponsible for his personal conduct with respect to sexual matters, and thereby dangerous to other persons. His history of sexual offenses and the danger in which each of his victims was placed during the offenses rendered him a dangerous person. He was in need of involuntary commitment in the secure confinement setting of the Minnesota Security Hospital.

The court found by clear and convincing evidence that Blodgett exhibited emotional instability, impulsiveness of behavior, lack of customary standards of good judgment, and failure to appreciate the consequences of personal acts, or a combination of any of these conditions, so as to render him irresponsible for his personal conduct with respect to sexual matters and thereby dangerous to other persons. It ruled that the statute was not unconstitutional and committed Blodgett as a psychopathic personality for an indeterminate period. Blodgett appeals.

## ISSUES

1. Was the trial court clearly erroneous in finding clear and convincing evidence to commit Blodgett as a psychopathic personality as defined in Minn.Stat. § 526.09 (1990)?

2. Was Blodgett's commitment as a psychopathic personality unconstitutional?

3. Does commitment as a psychopathic personality violate Blodgett's earlier plea agreement?

## ANALYSIS

■■■ 1. Blodgett first contends that the trial court was clearly erroneous in determining he met the statutory requisites for commitment as a psychopathic personality. Minn.Stat. § 526.09 defines psychopathic personality as

the existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any such conditions, as to render such person irresponsible for personal conduct with respect to sexual matters and thereby dangerous to other persons.

The Minnesota Supreme Court further defines a psychopathic personality as

persons who by an habitual course of misconduct in sexual matters have evidenced an utter lack of power to control their sexual impulses and who as a result are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire.

*State ex rel. Pearson v. Probate Court of Ramsey County*, 205 Minn. 545, 555, 287 N.W. 297, 302 (1939), *aff'd*, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940). The proof must be by clear and convincing evidence. Minn.Stat. §§ 526.10, subd. 1, 253B.18, subd. 1 (1990); *see In re Joelson*, 344 N.W.2d 613, 614 (Minn.1984). This court may not reverse the trial court's findings of fact unless clearly erroneous. *See In re Joelson*, 385 N.W.2d 810, 811 (Minn.1986).

Blodgett argues that the trial court improperly relied upon Dr. Jacobson's definition of irresponsible. Further, he contends that even if the proper definition was used, only Dr. Jacobson testified he met that definition. He cites Dr. Farnsworth, who testified the hospital did not find Blodgett was irresponsible regarding his criminal acts. Dr. Farnsworth believed Blodgett knew right from wrong and could comprehend the nature of his actions.

The word "irresponsible" in Minn.Stat. § 526.09 must be read in the context of the entire statutory definition. *See* Minn.Stat. § 645.08 (1990). It is the elements or combination of elements which render the person irresponsible within the meaning of the statute. Dr. Jacobson testified irresponsible meant behavior which was not responsible with regard to the consequences, and that the combination of statutory factors

rendered him irresponsible for his conduct with regard to sexual matters. While Blodgett was able to comprehend right from wrong, Blodgett himself explained that at the time he committed the acts, he did not understand the nature or consequences of his actions. The trial court, which credited Dr. Jacobson's testimony over Dr. Farnsworth's testimony, was entitled to resolve conflicting evidence as to issues of fact. *In re Martenies*, 350 N.W.2d 470, 472 (Minn.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984). It was not clearly erroneous in crediting Dr. Jacobson's testimony, and determining Blodgett was irresponsible within the meaning of the statute.

Blodgett next contends there was no showing that he had "an utter lack of power" to control his sexual behavior under *Pearson*, 205 Minn. at 555, 287 N.W. at 302. In its initial order, the trial court found Blodgett

has an uncontrollable desire for sexual activities, which were not always spurred on by prior contemplation, but is uncontrollable when he begins to engage in violent behavior.

In the order committing Blodgett for an indeterminate time, the trial court found Blodgett

displayed an impulsiveness of behavior in his sexual offenses in that his sexual offenses were committed without control but perhaps with some level of awareness.

Blodgett contends that only Dr. Jacobson testified he had an utter lack of power to control his sexual impulses. He characterizes Dr. Jacobson's testimony as confusing and inconsistent because he further stated that this lack of control occurred only under certain conditions and circumstances. Blodgett cites psychologist Dr. Richard R. Friberg, who examined Blodgett at Lino Lakes and testified at the initial hearing that he did not have an utter lack of power to control his sexual impulses and that he had shown control in many situations. Further, he cites Dr. Farnsworth's testimony that he did not have an utter lack of ability to control his impulses. Blodgett

contends that in light of this testimony, the trial court finding that he had an uncontrollable desire for sexual activities was clearly erroneous.

Dr. Jacobson specifically testified that the impulsiveness of behavior was quite clear in Blodgett's sexual offenses and specifically disagreed with the security hospital's opinion to the contrary. Dr. Jacobson explained that behavior takes place at certain times under certain circumstances, and when Blodgett committed his offenses, he showed an utter lack of control. The trial court credited the testimony and opinions of Dr. Jacobson. The court had evidence in the record upon which to base its findings, which are not clearly erroneous. *See In re Monson*, 478 N.W.2d 785, 789 (Minn.App. 1991); *In re Brown*, 414 N.W.2d 800, 803 (Minn.App.1987).

■ 2. Blodgett and the MCLU challenge the constitutionality of the psychopathic personality statute. Minnesota statutes are presumed constitutional. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn. 1989). A court must proceed with extreme caution before a statute may be declared unconstitutional, and it will do so only when absolutely necessary. *McGuire v. C & L Restaurant, Inc.*, 346 N.W.2d 605, 611 (Minn.1984). The party challenging the statute on constitutional grounds must prove beyond a reasonable doubt the statute violates a constitutional provision. *Id.*

The constitutionality of the psychopathic personality law has been addressed in several cases. The Minnesota Supreme Court upheld the psychopathic personality law against a challenge that it was void for vagueness. *Pearson*, 205 Minn. at 555, 287 N.W. at 302. The United States Supreme Court, reviewing the decision, held the statute was not void for vagueness, did not deny equal protection and was not violative of procedural due process. *Pearson*, 309 U.S. at 274–77, 60 S.Ct. at 526–27. *See Bailey v. Gardebring*, 940 F.2d 1150, 1153 (8th Cir.1991), *cert. denied.* — U.S. —, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992) (dual commitment to Department of Corrections and Commissioner of Public Welfare as psychopathic personality not unconstitu-

tional); *Reome v. Levine*, 692 F.Supp. 1046, 1051 (D.Minn.1988) (discussing validity of psychopathic personality statute).

*Due Process*

■ Blodgett and the MCLU argue that commitment pursuant to the psychopathic personality statute violates substantive due process under the federal and state constitutions. They claim it is unconstitutional because Blodgett is not mentally ill and the commitment is only for preventive detention.

■ Substantive due process protects against arbitrary and wrongful government actions in depriving a person of liberty by commitment. *Foucha v. Louisiana*, — U.S. —, —, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437 (1992). In deciding whether such a due process right has been violated, it is necessary to balance an individual's liberty interests against relevant state interests. *Youngberg v. Romeo*, 457 U.S. 307, 321, 102 S.Ct. 2452, 2461, 73 L.Ed.2d 28 (1982) (addressing liberty interests of a committed mentally retarded person in freedom from unreasonable bodily restraints). The nature and duration of the commitment must bear some reasonable relation to the purpose for which the individual is committed. *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972).

States have different combinations of bases upon which to justify civil commitment, including commitment as a sexual psychopath. *Id.* at 737, 92 S.Ct. at 1857.

There can be little doubt that in the exercise of its police power a State may confine individuals solely to protect society from the dangers of significant antisocial acts or communicable disease.

*O'Connor v. Donaldson*, 422 U.S. 563, 582–83, 95 S.Ct. 2486, 2497, 45 L.Ed.2d 396 (1975) (Burger, C.J., concurring).

The state also has a legitimate interest under its *parens patriae* power in providing care and treatment for citizens who are unable to help themselves because of emotional disorders. *See Addington v. Texas*, 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979).

In the interest of humanity and for the protection of the public, persons so afflicted should be given treatment and confined for that purpose rather than for the purpose of punishment.

*Pearson,* 205 Minn. at 550, 287 N.W. at 300.

The argument that the commitment is for detention and not treatment will be addressed first. Like all committed persons, persons committed under the psychopathic personality statute have the right to

proper care and treatment, best adapted, according to contemporary professional standards, to rendering further custody, institutionalization or other services unnecessary.

Minn.Stat. § 253B.03, subd. 7 (Supp.1991); Minn.Stat. § 526.10, subd. 1 (1990). The state concedes that persons committed under the psychopathic personality law are often difficult to treat successfully. However, the state contends that the fact that an habitual sex offender refuses to engage in therapy or treatment does not render the commitment unconstitutional. *See In re Wolf,* 486 N.W.2d 421 (Minn.1992).

Blodgett has been offered treatment on several occasions but refused it or failed to complete programs. There was conflicting evidence as to whether treatment would be effective. One of the objectives of commitment as a psychopathic personality, however, is to offer treatment. *See Joelson,* 385 N.W.2d at 811; *Enebak v. Noot,* 353 N.W.2d 544, 548–49 (Minn.1984). Even if the committed individual refuses treatment, the state has the power to keep trying to treat the individual. *Wolf,* 486 N.W.2d at 424. The claim that the commitment is merely for preventive detention is without merit.

The next issue concerns the argument that the state may not commit Blodgett because he is not "mentally ill." Blodgett and the MCLU first claim that the phrase "psychopathic personality" lacks "clinical validity." The state contends the phrase "psychopathic personality" had a recognized meaning when the statute was originally enacted in 1939. *See Pearson,* 205 Minn. at 549–50, 287 N.W. at 299. The

state argues that while the phrase may be no longer used by clinicians, there are recognized disorders such as paraphilia, pedophilia, sexual masochism, sexual sadism, and antisocial personality disorder, each of which may describe persons

who by an habitual course of misconduct in sexual matters have evidenced an utter lack of power to control their sexual impulses and who as a result are likely to attack or otherwise inflict injury, loss, pain, or other evil on the objects of their uncontrolled and uncontrollable desire.

*Id.* at 555, 287 N.W. at 302. We agree.

Blodgett also contends that under *Foucha* it is unconstitutional to involuntarily confine an individual to a mental institution absent a determination of current mental illness and dangerousness. Foucha was found not guilty by reason of insanity, and committed to a psychiatric hospital. *Foucha* —— U.S. at ——, 112 S.Ct. at 1782. At a later hearing, it was determined that Foucha had shown no evidence of mental illness since his admission. *Id.* He was diagnosed with an antisocial personality, a condition which is not a mental disease and is untreatable. *Id.* His confinement was continued on the grounds that he did not prove he was no longer dangerous to himself or others. *Id.* at ——, 112 S.Ct. at 1783. The Supreme Court held in relevant part that substantive due process was violated when the mental illness basis for holding Foucha as an insanity acquittee disappeared. *Id.* at ——, 112 S.Ct. at 1784.

Blodgett contends that he, like Foucha, is diagnosed with an antisocial personality disorder. He contends his confinement is based only on past conduct, not the existence of a mental illness. He asserts he has served his prison term pursuant to his plea agreement but is being held indefinitely because of his condition.

Individuals may be civilly committed if they fall into any of six categories, only two of which require a finding of mental illness. Minn.Stat. § 253B.02, subds. 13, 17 (1990) (mentally ill and mentally ill and dangerous to the public). Commitment need not be based on a finding of mental illness for those who are determined to be

mentally retarded, Minn.Stat. § 253B.02, subd. 14 (1990), chemically dependent, Minn.Stat. § 253B.02, subd. 2 (1990), a health threat to others, Minn.Stat. § 144.-4172, subd. 8 (1990), or a psychopathic personality, Minn.Stat. § 526.09.

Despite the fact that these latter categories do not involve mental illness, the purpose of the commitment for those in these categories is to receive some type of treatment. Those committed as mentally retarded or chemically dependent under Chapter 253B are entitled to treatment. Minn.Stat. § 253B.03, subd. 7 ("person receiving services under this chapter has the right to receive proper care and treatment); *Wolf,* 486 N.W.2d at 424 (chemically dependent person who refuses treatment may nonetheless be committed for treatment purposes).

Individuals who are a "health threat to others" under Minn.Stat. § 144.4172, subd. 8 may eventually be subject to court orders requiring them to participate in education, counseling, or treatment programs. Minn. Stat. § 144.4180, subd. 1 (1990). Such individuals may even be committed to an appropriate facility until they complete a course of treatment prescribed by the court. *Id.*, subds. 1(8), 2.

■ As discussed above, one of the purposes of commitment as a psychopathic personality is treatment. *See Pearson,* 205 Minn. at 550, 287 N.W. at 300. Thus, a commitment for purposes of treatment may be proper, even when the basis for the commitment is not mental illness.

The basis for Blodgett's commitment was not mental illness. Instead, he was committed as a psychopathic personality. Minn.Stat. § 526.09 does not apply to every person with an antisocial personality disorder who is guilty of sexual misconduct, but only to those for whom the court finds clear and convincing evidence exists that the statutory criteria as interpreted by the supreme court are met. *Pearson,* 205 Minn. at 555, 287 N.W. at 302. Thus, the person must exhibit such conditions of emotional instability, impulsiveness of behavior, lack of customary standards of good judgment, failure to appreciate the consequences of personal acts, or any combination thereof which renders the person "irresponsible for personal conduct with respect to sexual matters and thereby dangerous to other persons." Minn.Stat. § 526.09. Further, they must evidence "an utter lack of power to control their sexual impulses" as shown by "an habitual course of misconduct in sexual matters," resulting in an attack or infliction of "injury, loss, pain, or other evil." *Pearson,* 205 Minn. at 555, 287 N.W. at 302.

Commitment as a psychopathic personality does not violate Blodgett's substantive due process rights.

*Equal Protection*

■ The MCLU contends that the psychopathic personality law violates equal protection. The United States Supreme Court has rejected the argument that the psychopathic law violates equal protection, holding that persons within the class defined by the statute "constitute a dangerous element in the community which the legislature in its discretion could put under appropriate control." *Pearson,* 309 U.S. at 274–75, 60 S.Ct. at 526. The MCLU argues *Pearson* was wrongly decided because the Court applied a "rational basis" test rather than "strict scrutiny."

■ The general rule is that legislation is presumed valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). This gives way when a statute classifies by race, alienage or national origin, or impinges on a fundamental right protected by the constitution. *Id.* These laws will be upheld only if necessary to serve a compelling state interest. *Id.*

Both the United States and the Minnesota Supreme Court have applied the rational basis test to the equal protection clause in commitment cases. *See Cleburne,* 473 U.S. at 442, 105 S.Ct. at 3255 (mental retardation not a quasi-suspect classification); *In re Harhut,* 385 N.W.2d 305, 311 (Minn. 1986). The decision in *Pearson* in which

the Supreme Court upheld the commitment law as against an equal protection challenge is controlling. *See Pearson*, 309 U.S. at 274–75, 60 S.Ct. at 526.

 Even if a heightened scrutiny were applied on the grounds that the statute impinges upon the committed person's liberty interests, the statutory classification stands. The psychopathic personality statute serves compelling state interests of confining only the individuals as to whom the danger is clearly identified, and the need for protection is established. *See Reome*, 692 F.Supp. at 1051.

*Void for Vagueness*

 The next issue is whether the statute is void for vagueness. Courts should exercise extreme caution before declaring a statute void for vagueness. *Getter v. Travel Lodge*, 260 N.W.2d 177, 180 (Minn. 1977) (citing *Anderson v. Burnquist*, 216 Minn. 49, 53, 11 N.W.2d 776, 778 (1943)). The law should be upheld

> "unless its terms are so uncertain and indefinite that after exhausting all rules of construction it is impossible to ascertain the legislative intent."

*Id.* (quoting *Anderson*, 216 Minn. at 53, 11 N.W.2d at 778. Where the statute imposes criminal penalties, a higher standard of certainty of meaning is required. *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn. 1985). However, the psychopathic commitment statute is not criminal in nature. *State v. Enebak*, 272 N.W.2d 27, 30 (Minn. 1978).

The Minnesota Supreme Court addressed the issue of whether the statute is void for vagueness. It construed the law to apply only to

> those persons who by an habitual course of misconduct in sexual matters have evidenced an utter lack of power to control their sexual impulses and who as a result are likely to attack or otherwise inflict injury, loss, pain, or other evil on the objects of their uncontrolled and uncontrollable desire.

*Pearson*, 205 Minn. at 555, 287 N.W. at 302. The United States Supreme Court has recognized that this construction destroys the contention the statute is too vague. *Pearson*, 309 U.S. at 274, 60 S.Ct. at 526.

The MCLU contends that these terms define prohibited behavior in a manner that ordinary people of common intelligence could not discern. It asserts that this could sanction a wide range of behavior and alleges the indefiniteness allows for arbitrary enforcement. The *Pearson* construction is sufficient to overcome any argument as to vagueness. The statute has been repeatedly applied without difficulty in interpreting the meaning of the statutory requirement. *See, e.g., Brown*, 414 N.W.2d at 803–04; *Martenies*, 350 N.W.2d at 472.

As both the Minnesota and United States Supreme Courts have ruled, the statute is not void for vagueness.

*Double Jeopardy*

 The MCLU contends that the use of the law to further deprive Blodgett of his liberty based on the same criminal offense for which he has already been punished violates the double jeopardy clauses of the Minnesota and United States Constitutions. Under those provisions, no person may be put twice in jeopardy for the same offense. U.S. Const. amend. V; Minn. Const. art. I, § 7. The prohibition against double jeopardy protects against three distinct abuses:

> a second prosecution for the same offense after acquittal; a second criminal prosecution for the same offense after conviction; and multiple punishments for the same offense.

*United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989).

The MCLU asserts that Blodgett has served his sentence for the sexual offenses he committed. It contends the state has successfully "retried" him under the guise of the psychopathic personality statute and has obtained an indefinite term of incarceration which is greater than the time already served for the crime. Further, it argues the state seeks to impose punishments under the criminal statutes and the psychopathic personality statute for the

same act, in violation of the prohibition against multiple punishments for the same offense.

Minn.Stat. § 526.09 requires more than a "retrial" to support commitment. Instead, the elements of the psychopathic personality statute must be met. *See Brown*, 414 N.W.2d at 804. Dual commitments to the Minnesota Security Hospital and the Minnesota Department of Corrections have been upheld where procedural due process is provided. *See Lausche v. Commissioner of Pub. Welfare*, 302 Minn. 65, 71, 225 N.W.2d 366, 369 (1974), *cert. denied*, 420 U.S. 993, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1975). Commitment is not only for punitive purposes; persons committed as psychopathic personalities are entitled to treatment. *Pearson*, 205 Minn. at 550, 287 N.W. at 300; *Martenies*, 350 N.W.2d at 472; Minn.Stat. § 253B.03, subd. 7. As discussed earlier, Blodgett refused or failed to complete treatment programs.

The prohibition against double jeopardy does not preclude Blodgett's commitment as a psychopathic personality. *Enebak*, 272 N.W.2d at 30.

3. Finally, the MCLU contends that commitment as a psychopathic personality violates the plea agreement which Blodgett entered for his criminal sexual offense. It contends that the state now seeks to add indefinite time to Blodgett's sentence, based upon his past criminal acts. It appears Blodgett did not raise his plea bargain issue in the trial court, which precludes this court from considering the issue. *Thayer v. American Fin. Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn.1982).

In any event, Blodgett may not prevail on the merits. Minnesota courts have consistently upheld dual commitments as constitutional, recognizing one is penal and the other is civil. *Enebak*, 272 N.W.2d at 30. The courts have recognized the underlying purpose of civil commitment is treatment, not punishment. *Pearson*, 205 Minn. at 550, 287 N.W. at 300. Since the two matters are separate, there is nothing in the criminal plea bargain to suggest the individual will not later be subject to civil commitment proceedings. The court has not

been made aware of any evidence the county attorney agreed to waive the right to initiate civil commitment proceedings.

DECISION

The judgment of the trial court committing Blodgett as a psychopathic personality is affirmed.

Affirmed.